961 P.2d 1038

**FORUM DEVELOPMENT, L.C., an Arizona limited liability company, Plaintiff–Appellant,**

**v.**

**ARIZONA DEPARTMENT OF REVENUE, an agency of the State of Arizona; Maricopa County, a political subdivision of the State of Arizona, Defendants–Appellees.**

**WAHL TO WAHL, L.L.C., a limited liability company, Plaintiff–Appellant,**

**v.**

**ARIZONA DEPARTMENT OF REVENUE, an agency of the State of Arizona; Maricopa County, a political subdivision of the State of Arizona, Defendants–Appellees.**

**Leslie WERTZ, an individual, Plaintiff–Appellant,**

**v.**

**ARIZONA DEPARTMENT OF REVENUE, an agency of the State of Arizona; Maricopa County, a political subdivision of the State of Arizona, Defendants–Appellees.**

Nos. 1 CA–TX 96–0019, 1 CA–TX 96–0020, 1 CA–TX 96–0021.

Court of Appeals of Arizona, Division 1, Department T.

Dec. 11, 1997.

Review Denied Sept. 10, 1998.

Donald P. Roelke, Phoenix, for Plaintiffs–Appellants.

Richard J. Romley, Maricopa County Attorney by Sandor Shuch, Deputy County Attorney, Phoenix, for Defendants–Appellees.

## OPINION

WEISBERG, Judge.

These consolidated appeals concern provisions enacted in 1994 and 1995 to govern the filing of valuation and classification appeals during a two-year transition between the pre–1995 statutory valuation and tax appeal timetable and the post–1996 timetable. For the reasons set forth below, we affirm.

## FACTS AND PROCEDURAL HISTORY

In an uncodified session law, the legislature set forth procedures for the review of tax assessments during an interim period consisting of tax years 1995 and 1996. The session law required county assessors to mail property assessment notices for the 1995 and 1996 tax years on or before November 15, 1994, and allowed dissatisfied property owners either to petition for administrative review of an assessment on or before December 31, 1994 or to appeal directly to the tax court on or before November 1, 1995. It also provided an exception in cases of new construction, change in property use and change in ownership occurring after October 31, 1994, allowing appeals regarding those changes to be filed through December 15, 1995. 1994 Ariz. Sess. Laws ch. 323, § 49, as amended by 1995 Ariz. Sess. Laws ch. 249, § 36 ("§ 49").

### Appellant Forum Development, L.C.

Among the parcels that were the subject of the November 1994 valuation notices was a vacant 14.8–acre parcel in Gilbert. Forum Development, L.C. became the owner of this parcel on or about October 19, 1995, which prevented it from petitioning the Maricopa County Assessor ("Assessor") by the December 31, 1994 deadline for a valuation review and subsequent administrative review. Only the owner of the parcel at the earlier time could have done so. See § 49(A)(1)(c), (2), (3).

On December 15, 1995, Forum Development filed a valuation appeal in the tax court. See Ariz.Rev.Stat. Ann. ("A.R.S.") §§ 42–177, 42–246 (1994). It later filed an amended complaint alleging three alternate counts. Count One asked the court to find that the 1996 full cash and limited values of the parcel were excessive, to determine the correct valuations, and to award Forum Development the amount of its overpayment of 1996 taxes. Count Two asked the court to find that the 1996 assessment was illegal because the parcel's 1996 full cash value and limited value exceeded its market value, to determine the correct assessment for 1996, and to award Forum Development the amount of its overpayment. See A.R.S. § 42–204. Count Three asked the court to find that Forum Development had no plain, adequate, and speedy remedy at law for reviewing the 1996 assessment and taxes on the parcel, to order appellees to hold a hearing to correct the 1996 assessment, and to enter judgment reducing the 1996 assessment and refunding any excess payment to Forum Development.

### Appellant Wahl to Wahl, L.L.C.

Among the parcels on which the Assessor sent valuation notices for 1995 and 1996 were three that comprised an office building in Phoenix. Wahl to Wahl, L.L.C., became the owner of these parcels on December 5, 1995. Like Forum Development, Wahl to Wahl was unable to pursue timely administrative review of the 1996 valuations. Section

49(A)(1), (2), (3). Wahl to Wahl was also unable to commence a valuation appeal in the tax court until after December 5, 1995, when it became the parcels' owner.

On December 15, 1995, through the same attorney who represented Forum Development, Wahl to Wahl filed an appeal in the tax court pursuant to A.R.S. sections 42–177 and 42–246. It later filed a three count amended complaint. Except for the factual details peculiar to Wahl to Wahl's situation, the substance of each count of the amended complaint was the same as the substance of each corresponding count asserted by Forum Development.

### Appellant Leslie Wertz

Leslie Wertz became the owner of a 39.39 acre parcel in Maricopa County in March 1994. The use of the parcel changed from vacant land to agricultural land at some point in 1995 and continued as such during 1996. Wertz was unaware of any claim she might have had concerning the assessment of her parcel for 1996 and filed no administrative appeal during 1995.

On December 14, 1995, through the same attorney who represented Forum Development and Wahl to Wahl, Wertz filed a 1996 valuation appeal in the tax court pursuant to A.R.S. sections 42–177 and 42–246. Five months later, she filed an amended complaint. Count One re-alleged the substance of her initial complaint—that the full cash and limited values of her parcel for 1996 were excessive because the parcel was used for agricultural purposes, so the 1996 full cash value should have been set at a much lower sum. *See* A.R.S. § 42–141(A)(5) (fourth sentence). Counts Two and Three alleged alternate illegality and special action claims analogous to those alleged by Forum Development and Wahl to Wahl.

### Dispositions in the Tax Court

Maricopa County moved to dismiss each action for lack of subject matter jurisdiction due to untimely filing. The county's motions also sought dismissal on the ground that each complaint failed to state a claim on which relief could be granted. *See* Rule 12(b)(6), Arizona Rules of Civil Procedure. The tax court dismissed all three actions without stating its reasons. Appellants timely appealed. We have jurisdiction pursuant to A.R.S. section 12–2101(B). The appeals were assigned to Department T of this court pursuant to A.R.S. sections 12–120.04(G) and 12–170(C).

### ISSUES

We consider the following issues:

1. Whether appellants filed these tax appeals within the time provided by the tax code; and

2. Whether statutory alternative claims were available to appellants or, if not, whether the dismissal of the 1996 tax appeals as untimely violates due process.

### DISCUSSION

 The question whether the filing of appellants' actions conferred subject matter jurisdiction on the tax court is one of law, which we review de novo. *Hughes v. Creighton,* 165 Ariz. 265, 267, 798 P.2d 403, 405 (App.1990). In reviewing an order dismissing an action for failure to state a claim on which relief can be granted, we assume the truth of the complaint's allegations, and will uphold dismissal only if the plaintiff would not be entitled to relief on any legal theory under any facts the plaintiff could seek to prove in support of the claims alleged. *See Menendez v. Paddock Pool Const. Co.,* 172 Ariz. 258, 261, 836 P.2d 968, 971 (App.1991).

### Background

#### *Pre–1995 Valuation and Appeal System*

Under Arizona's property tax valuation system for tax years before 1995, county assessors were to send valuation notices to property owners by November 15 of the year preceding the tax year. A.R.S. § 42–221(D) (1991). A property owner could petition the assessor to review the proposed valuation for the tax year within forty-five days after the notice was sent or by December 31, whichever was later. A.R.S. § 42–221(E).

A.R.S. section 42–221(B) provided that property was to be valued for a given tax

year as of January 1 of that year. The inchoate lien on the property for that year's taxes arose as of the same date. *See* A.R.S. § 42–312(B); *In re Ecology Paper,* 17 B.R. 281 (Bkr.1982).

The assessor was required to rule on any property owner's review petition by April 1 of the tax year. A.R.S. § 42–221(I). A dissatisfied property owner could appeal to the county board of equalization within fifteen days of the mailing of the assessor's decision. A.R.S. § 42–241.01(A). The county board was required to rule by May 10. A.R.S. § 42–241.01(D). A property owner still dissatisfied with the county board's decision could appeal to division one of the state board of tax appeals within fifteen days after the county board mailed its decision. A.R.S. § 42–245(A). The state board was required to rule by July 25. *Id.* If still dissatisfied, the property owner could bring a valuation appeal in the tax court within sixty days after the date of the state board's decision. A.R.S. § 42–176(A).

Alternatively, a property owner could elect to bypass all or part of the administrative tax appeal process and file a valuation appeal in the tax court on or before November 1 of the tax year. A.R.S. § 42–246(A) (Supp.1996), as amended effective July 17, 1994.

Under the pre–1995 system, property tax assessments and collections proceeded concurrently with the administrative and judicial appeal processes. By April 20 of the tax year, the county assessor was required to certify the tax roll and deliver it to the board of supervisors. A.R.S. § 42–239(A). On the third Monday in August of that year, the tax rate would be set and the tax levied. *See* A.R.S. § 42–304(B). The first half taxes for the year became due on October 1 and delinquent after 5:00 P.M. on November 1. A.R.S. § 42–381(A).

*Post–1996 Valuation and Appeal System*

Through 1994 Ariz. Sess. Laws ch. 323, as amended by 1995 Ariz. Sess. Laws ch. 249, the Legislature initiated a new property tax valuation and assessment system for tax years 1997 and beyond. · Under this post–1996 system, the valuation date for any given tax year is no longer January 1 of that same year, but rather January 1 of the preceding year (the valuation year). This change permits additional time for the valuation, assessment, and collection processes and for the administrative and judicial appeal processes.

For the 1997 tax year and thereafter, the county assessor's notice of valuation is due by March 1 of the preceding (valuation) year. A.R.S. § 42–221(D) (Supp.1996). A dissatisfied property owner has sixty days after the notice of valuation is mailed to petition the assessor for a valuation change or, alternatively, may file an action in the tax court pursuant to A.R.S. section 42–177 on or before December 15 of the valuation year. A.R.S. §§ 42–221(E), 42–246(A).

The assessor must rule on all property owners' petitions by August 15 of the valuation year. A dissatisfied property owner has twenty-five days after the assessor mails his or her ruling to appeal to the county board of equalization, if one exists in the county, or otherwise to the state board of equalization. A.R.S. § 42–221(I), (J). Alternatively, a property owner may file an action in the tax court within sixty days after the mailing of the assessor's ruling, but in no event later than December 15 of the valuation year. A.R.S. § 42–246(B).

Both the state and county boards must rule on all appeals by October 15 of the valuation year. A.R.S. §§ 42–172.02(E) and 42–241(C). A property owner dissatisfied with a county board's decision may appeal to the state board within fifteen days after the mailing of the county board's ruling or instead may bring an action in the tax court within sixty days after the mailing of the county board's decision, but in no event later than December 15 of the valuation year. A.R.S. §§ 42–245(A), 42–246(B). Similarly, a property owner dissatisfied with the state board's decision may bring an action in the tax court within sixty days after the mailing of the board's decision, but in no event later than December 15 of the valuation year. A.R.S. § 42–176(B).

Under the post–1996 system, as under the pre–1995 system, an inchoate lien for real property taxes arises on January 1 of the tax year. *See* A.R.S. § 42–312(B) (1991). The

tax rate is determined and the taxes are levied on the third Monday in August of that year. A.R.S. § 42–304(B). The first half taxes become due on October 1 of the tax year and delinquent after 5:00 P.M. on November 1. A.R.S. § 42–381(A).

### 1995–96 Interim Valuation and Appeal Process

The central feature of the new valuation timetable for 1997 and beyond is that property taxes for a given year are now calculated on the value of the property as of January 1 of the preceding year. In contrast, under the former timetable, taxes were calculated on a valuation that was determined as of the first day of the year in which the tax was assessed and paid. Given this fundamental shift, managing the transition period between the old and new timetables required special rules and deadlines, which are embodied in § 49.

The interim process created by § 49 determined 1995 valuations as if under the old system, in which tax values were determined as of the first day of the tax year, January 1, 1995. At the same time, the interim process determined 1996 valuations as if under the new system, in which the tax value is determined as of the first day of the valuation year, again January 1, 1995. The interim process thus effectively combined tax years 1995 and 1996 as a single, two-year taxable period for which taxes were assessed for each year on the property's valuation as of the first day of the taxable period—January 1, 1995.

### Analysis

#### Applicable Filing Deadline for Appellants' Tax Court Actions

■ Appellants first argue that, because of Forum Development's and Wahl to Wahl's post-deadline purchases, and Wertz's 1995 change in the use of her property, their tax court filing deadlines were postponed by operation of law to either December 15, 1996 or, at the earliest, December 15, 1995. As authority for the postponement to December 15, 1996, they rely on new A.R.S. section 42–221.01(B) (Supp.1996):

A new owner of property that was valued pursuant to § 42–221 and which valuation was not appealed by the former owner of the property may appeal the valuation to tax court on or before December 15 of the year in which the taxes are levied.

Because appellants' 1996 taxes were levied on the third Monday in August 1996, they argue that they could have filed their tax court valuation appeals at any time up to and including December 15, 1996.

Their reliance on this provision is misplaced. Section 49(A) provides in part:

A. *Notwithstanding* sections 42–146, 42–147 and 42–167, Arizona Revised Statutes, *any provision of title 42, chapter 2 or 3, Arizona Revised Statutes,* and chapter 10, section 42–1615, Arizona Revised Statutes, relating to property assessments by the county assessors:

. . . .

5. *Except as provided by paragraph 6, an appeal to tax court relating to valuation or classification of property for tax year 1995 or 1996 shall be filed on or before November 1, 1995.*

(Emphasis added.) The revised A.R.S. section 42–221.01(B) is in chapter 2, title 42, Arizona Revised Statutes. Under the introductory clause of § 49(A), the provisions of § 49(A) supersede A.R.S. section 42–221.01(B) to the extent of any inconsistency. The deadline of December 15, 1996 permitted by A.R.S. section 42–221.01(B) was inconsistent with the November 1, 1995 deadline mandated by § 49(A)(5). Accordingly, new A.R.S. section 42–221.01(B) did not apply to postpone appellants' November 1, 1995 deadline for filing 1996 valuation actions in the tax court until December 15, 1996.

■ Appellants also claim the protection of the December 15, 1995 deadline provided by § 49(A)(6). That subsection provides:

6. In the case of new construction, destruction, additions to or deletions from assessment parcels, changes in property use and changes in ownership, including changes in ownership by operation of law, that occur after October 31, 1994:

(a) The assessor shall notify the owner of the property of any change in the assessment on or before September 30, 1995.

(b) The property owner may petition the state board for review of the changed assessment within twenty-five days after the date of the assessor's notice.

(c) On or before November 15, 1995, the state board shall complete all hearings and issue all decisions with respect to changes in assessments pursuant to this paragraph.

(d) An appeal to tax court relating to changes in assessments pursuant to this paragraph shall be filed on or before December 15, 1995.

Appellants contend that subparagraphs (a) through (d) are independent sentences. Therefore, if there were a change in ownership or change in property use after October 31, 1994, this legislation permitted the property owner to file a court appeal through December 15, 1995. Appellants maintain that the subsection did not require that the 1996 assessment be changed by the assessor to afford the appeal right provided in subparagraph (d). Because there was either a change in ownership or change in use of the property after October 31, 1994, appellants claim that subparagraph (d) allows their appeals until December 15, 1995.

We disagree. Appellants' implicit premise is that a series of co-equal statutory subdivisions that are written as independent of each other in form must also be independent of each other in substance. This premise ignores statutory context.

As appellants correctly point out, the introductory clause of § 49(A)(6) refers to a number of events that are not related to an action by the county assessor, including changes in use or ownership. Subparagraphs (a) through (d), however, all deal strictly with a "change in the assessment." Only an assessor, not a property owner, can make a "change in the assessment." Subparagraph (a) requires the assessor to notify the proper-

ty owner of any such "change in the assessment" by September 30, 1995. Subparagraph (b) gives the property owner time to petition the state board to review the "changed assessment" about which the assessor has sent notice. Subparagraph (c) assumes that the property owner has done so and gives the state board until November 15, 1995 to issue its ruling. Subparagraph (d) gives the property owner until December 15, 1995 to appeal to the tax court concerning any "change[ ] in [the] assessment" made "pursuant to this paragraph."

Contrary to appellants' analysis, a reading of § 49(A)(6) demonstrates that subparagraphs (a) through (d) were not intended as a menu of unrelated items from which a property owner might pick and choose. They comprise instead an integrated series of steps that govern a specific category of eventualities contemplated by the Legislature. Reading subparagraphs (a) through (d) together with the clause that introduces them, we conclude that § 49(A)(6) applies only to those situations in which the county assessor elects to make a new valuation and assessment because of "new construction, destruction, additions to or deletions from assessment parcels, changes in property use and changes in ownership, including changes in ownership by operation of law, that occur after October 31, 1994." Section 49(A)(6).[1] Section 49 does not purport to grant to a property owner the correlative right to initiate a valuation change for 1995 or 1996 through the administrative or judicial appeal process.

■ Appellants respond, however, that the assessor in fact "changed" their 1996 assessments by increasing each of their parcels' limited property values over those for 1995. They contend that § 49(A)(6)(d) therefore applied to each of them, rendering their tax court filings timely.

1. This conclusion is supported by remarks of Rep. McGibbon during a meeting of the Committee of the Whole of the Arizona House of Representatives, March 4, 1994. Concerning the proposed adoption of ·A.R.S. section 42–221.01, of which subsection (A) is similar to § 49(A)(6)(a) through (d), Rep. McGibbon stated: "This

amendment addresses the concerns that were expressed by a number of individuals, particularly as they relate to new construction and getting it added in a timely fashion to the tax rolls." Audio tape in custody of Clerk of the Arizona House of Representatives.

Again, we disagree. A parcel's limited property value is an arithmetical function of its full cash value for the tax year and its limited property value for the preceding tax year. It is set at the greater of (a) 110% of the preceding year's limited value, or (b) the sum of the preceding year's limited value plus 25% of the difference between the current year's full cash value and the preceding year's limited value; except that a parcel's limited value may never exceed its full cash value for the same year. A.R.S. § 42–201.02(B) (1991). Limited property value is defined such that it will always change from one tax year to the next unless the relevant parcel's full cash value and limited value were the same in the preceding year and its full cash value remains unchanged for the tax year.

Once the assessor has determined a new full cash value for the parcel in question, he or she merely calculates any resultant change in limited property value and records it ministerially. Limited property value changes by operation of law. The assessor does not "change" limited property value within the meaning of § 49(A)(6).

Additionally, these purely computational adjustments in limited property values may or may not be occasioned by the events listed in the introductory clause of § 49(A)(6). An increase in full cash value due strictly to market influences will produce a rise in limited property value to the same extent as an increase due to the construction of a new building or the addition of property to an assessment parcel. See § 49(A)(6). Any increase in a parcel's full cash value from one year to the next, no matter what its cause, will have that effect. If the legislature had intended all increases in limited property value to trigger the extended tax court filing deadline provided by § 49(A)(6)(d), it would not likely have predicated the application of that provision expressly on the narrow list of value-raising events in its introductory clause.

We therefore conclude that the Assessor did not make a "change in the assessment" for any of the appellants within the meaning of § 49(A)(6). Consequently, that provision was unavailable to any of them and, as a matter of statutory law, none were permitted to file a valuation appeal in the tax court after November 1, 1995. Section 49(A)(5).

*Alternative Claims*

Appellants contend that, even if their tax appeals are barred by § 49, their alternative claims under A.R.S. section 42–204, the common law, and for statutory mandamus were not subject to a filing deadline of November 1, 1995. Furthermore, they argue that some remedy must be available to them or else they would be deprived of notice and an opportunity to be heard, violating due process.[2]

■ Real property taxes in Arizona are assessed against the property, not the owner. *See Seafirst Corp. v. Arizona Dep't of Revenue,* 172 Ariz. 54, 58, 833 P.2d 725, 729 (Tax 1992). The *Seafirst* court decided that a property owner who had acquired its property after the deadline for an administrative valuation appeal did not have a due process right to receive a valuation notice for the tax year and to pursue a tax court valuation challenge:

> The tax is imposed on the property. *Read v. Arizona Dep't of Revenue,* 166 Ariz. 533, 536, 803 P.2d 944 (Tax 1991). The lien is effective on January 1 of the tax year. A.R.S. § 42–312. When property subject to a deed of trust is sold in a trustee's sale, it is sold at public auction. A.R.S. § 33–810. The buyer is a stranger to the property, even if the buyer is the creditor who initiated the sale. If a property is sold after the time has passed to begin an administrative appeal, it is sold after the Assessor has determined valuation and classification. At the time the Assessor did to the property what assessors do, the buyer at a later sale had no property right of which the Assessor's acts

2. Although each of taxpayers' briefs also makes a facial claim under the Equal Protection Clause, none presents any independent analysis or authority in support of that argument. We therefore decline to address that issue. *See Reisch v. M & D Terminals, Inc.,* 180 Ariz. 356, 360, 884 P.2d 242, 246 (App.1994); *Litchfield Park Service Co. v. Arizona Corp. Comm'n,* 178 Ariz. 431, 438, 874 P.2d 988, 995 (App.1994); *Ness v. Western Sec. Life Ins. Co.,* 174 Ariz. 497, 500, 851 P.2d 122, 125 (App.1992).

could deprive it. Therefore, the Assessor's acts do not give post-assessment buyers any right to due process with respect to them.

....

The Court has ... held that a buyer of the taxed property who buys after the tax has been assessed has no property right affected by the tax assessment which the constitution protects. This is true even if the buyer is a creditor who buys at a deed of trust trustee's sale. [172 Ariz. at 58–59, 833 P.2d at 729–30.]

The *Seafirst* court acknowledged the fact that the property owner *at the time of the tax assessment* has a due process right to notice and to be heard, but reasoned that subsequent owners do not gain additional due process rights upon purchasing the property after the assessment. *Id.* This is a direct consequence of the holding in the *Read* case, which established that real property taxes are owed by the property, not the property owner. 166 Ariz. at 536, 803 P.2d at 947 (*citing Peabody Coal Co. v. Navajo County*, 117 Ariz. 335, 572 P.2d 797 (1977); *Santos v. Simon*, 60 Ariz. 426, 138 P.2d 896 (1943); *Pothast v. Maricopa County*, 43 Ariz. 302, 30 P.2d 840 (1934)).

▨ Applying this principle to the appellants' statutory claims shows that the difficulty with their claims is not that they were filed too late, but rather that the claims themselves are legally unavailable to appellants.

A.R.S. section 42–204 (Supp.1996) provides in part:

C. Except as provided in chapter 1, article 5.1 of this title,[3] within one year after payment of the first installment of the tax, an action may be maintained to recover any tax illegally collected, and if the tax due is determined to be less than the amount paid, the excess shall be refunded in the manner provided by this title. Interest at the legal rate on the overpayment shall be payable from the date of overpayment....

....

E. Any taxpayer dissatisfied with the valuation or classification of his property may appeal to the superior court only in the time and manner prescribed in § 42–176, subsections A through D or § 42–246, whichever is applicable.

At all times material to these appeals, A.R.S. section 42–246, as amended effective July 17, 1994, provided that a property owner dissatisfied with the valuation or classification of his or her property could appeal to the tax court before November 1 or could seek review of an administrative decision within sixty days of the decision, no later than November 1. Any of appellants' predecessors could have filed timely appeals, but did not do so. As a result, A.R.S. section 42–204(E) barred the subsequent property owners from commencing later valuation or classification appeals under the guise of common law or statutory challenges to the legality of their 1996 assessments.

▨ Appellants correctly note that due process requires that every property owner receive as a matter of right an opportunity to be heard on the issue of valuation before the property tax becomes fixed and final. *State Tax Comm'n v. Board of Supervisors*, 43 Ariz. 156, 167, 29 P.2d 733, 738 (1934), relying on *Londoner v. City and County of Denver*, 210 U.S. 373, 385, 28 S.Ct. 708, 713, 52 L.Ed. 1103 (1908), and *Yuma County v. Arizona & Swansea R.R. Co.*, 30 Ariz. 27, 243 P. 907 (1926). Due process is satisfied where the state either provides the property owner with a meaningful opportunity to withhold payment and obtain a pre-deprivation determination of the tax assessment's validity or permits the property owner to commence a post-deprivation proceeding that offers a fair opportunity to challenge the accuracy and legal validity of the tax obligation and a "clear and certain remedy" in the form of a refund. *Bohn v. Scott*, 185 Ariz. 284, 292 n. 3, 915 P.2d 1239, 1247 n. 3 (App.1996), summarizing *McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 38, 110 S.Ct. 2238, 2251, 110 L.Ed.2d 17 (1990).

▨ In the instant case, because the tax is assessed against the property and not the

---

**3.** The remedy these sections provide is unavailable to change a valuation that was initially established by the use of discretion, opinion, or judgment. A.R.S. § 42–179(3). It is expressly made unavailable to authorize an independent review of the overall valuation of property that could have been appealed pursuant to A.R.S. section 42–177. A.R.S. § 42–179.04(B).

owner, and because each property owner at the time of the assessment was given notice and an opportunity to be heard, due process was satisfied. "[K]nowledge of the property valuation and the amount of the tax was available to the [appellants] upon inquiry of the appropriate county official." *Seafirst,* 172 Ariz. at 59, 833 P.2d at 730. We therefore hold that due process was satisfied by the notice and appeal rights afforded to the prior owners.[4]

## CONCLUSION

The statutory barriers to appellants' tax appeals have not violated their due process rights. We therefore affirm the judgments of dismissal.

GRANT, P.J., and McGREGOR, J., concur.

---

**4.** We also note that Forum Development's and Wertz' statutory and due process claims would fail in any event because they had the statutory right to contest the tax assessments. Effective November 1, 1994, owners of real property in Arizona acquired the substantive right to commence tax court challenges to the 1995 and 1996 tax valuations of their property through and including November 1, 1995. Section 49(A)(5). Both Forum Development and Wertz acquired their parcels before November 1, 1995, and both had constructive notice of their rights through the 1994 enactment of § 49. Both, however, failed to exercise their rights. Since they allowed their statutory appeal rights to lapse, no further remedy was permitted by A.R.S. section 42–204(E), which does not offend due process.