993 P.2d 1137

**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Plaintiff–Appellant,**

v.

**MARICOPA COUNTY, a political subdivision of the State of Arizona; and The Arizona Department of Revenue, a department of the State of Arizona, Defendants–Appellees.**

No. 1 CA–CV 98–0595.

Court of Appeals of Arizona,
Division 1, Department T.

Aug. 26, 1999.

Nearhood Law Offices, P.L.C. by Richard D. Nearhood and James R. Nearhood, Scottsdale, Attorneys for Plaintiff–Appellant.

Helm & Kyle, Ltd. by Roberta S. Livesay and Thomas A. Walcott, Tempe, Attorneys for Defendant–Appellee Maricopa County.

Janet A. Napolitano, Arizona Attorney General by Frank Boucek, Assistant Attorney General Civil Division, Tax Section Attorneys, Phoenix, for Defendant–Appellee Department of Revenue.

## OPINION

BERCH, Presiding Judge.

¶ 1 Bank of America National Trust and Savings Association ("Bank") appeals from summary judgment for Maricopa County and the Arizona Department of Revenue ("ADOR") on the Bank's consolidated claims [1] for refunds of 1995 and 1996 property taxes it alleges were illegally assessed and collected because the statute that formerly taxed "possessory interests" had been repealed effective January 1, 1995. The trial court ruled that an allegation made in a property tax valuation appeal in the tax court judicially estopped the Bank from taking an inconsistent position in superior court. The trial court also held that the substance of the consolidated claims concerned not the validity of the tax, but the property's statutory "classification," and therefore the complaints were untimely under former A.R.S. section 42–246 (Supp.1998).[2] We conclude that the *doctrine of judicial estoppel does not apply,* that the bank's statement was not a binding judicial admission, and that the Bank's claims were properly brought as "illegal tax" rather than "classification" claims under former section 42–204(C). *We therefore reverse and remand for an adjudication of the Bank's claims on the merits.*

## BACKGROUND

¶ 2 At all times material to this case, the Bank has occupied and used the Bank of America Operations Center ("improvements" or "Operations Center"), a building located at 1825 East Buckeye Road in Phoenix. The City of Phoenix owns the land on which the improvements are located and leases it to the Bank.

¶ 3 For tax years 1995 and 1996, the County taxed the Bank as the owner of the Operations Center, assessing property taxes against the building as an improvement on a possessory right ("IPR"). The Bank, on the other hand, contended that the City of Phoe-

---

1. The claims were brought pursuant to former Arizona Revised Statutes Annotated ("A.R.S.") section 42–204(C) (Supp.1998), which has been amended and renumbered as section 42–11005(A) (1999) (effective January 1, 1999).

2. Amended and renumbered as A.R.S. section 42–16201 (1999).

nix owned both the land and the building and leased them to the Bank, granting the Bank only a leasehold or "possessory interest" in the building. Because legislative authorization for ad valorem taxation of possessory interests was repealed effective January 1, 1995,[3] the Bank argued that the assessments against the building for 1995 and 1996 were "illegal."

¶ 4 While the Bank's refund action was pending in superior court, it filed a property tax valuation appeal in tax court [4] challenging the County's 1996 valuation of the Operations Center building. Unbeknownst to Bank's counsel in the refund action, counsel who represented the Bank in the tax court action alleged in its complaint that "[a]t all times material hereto, plaintiff owned legal and/or equitable title to the Property." The County's answer denied the allegation for lack of sufficient information to form a belief as to its truth or falsity. The Bank's claims were then consolidated in the superior court, and the tax court, over the County's objection, granted the Bank's motion to voluntarily dismiss the tax court appeal.

¶ 5 The County moved for summary judgment, arguing that the Bank's allegation that it owned "legal and/or equitable title" to the Operations Center building in the tax court appeal judicially estopped the Bank from urging in the superior court action that it had only a possessory interest in the Operations Center building. The County also moved to dismiss the Bank's lawsuit, arguing that the superior court actions were no more than disguised 1995 and 1996 "classification" claims, which the Bank was required to pursue by way of tax appeals no later than November 1, 1995.[5] The superior court

ruled for the County on both issues, and the Bank appealed. We have jurisdiction pursuant to A.R.S. section 12–2101(B) (1994).

## DISCUSSION

*A. Effect of Statement in Tax Court Pleading*

i. *Judicial Estoppel*

■ ¶ 6 The County argues that the doctrine of judicial estoppel binds the Bank in the superior court action to its allegation in its tax court complaint that it owned "legal and/or equitable title" to the Operations Center.[6] The trial court agreed and estopped the Bank from denying ownership of the improvements. We conclude that the trial court erred.

■ ¶ 7 Judicial estoppel is a doctrine that protects the integrity of the judicial system by "prevent[ing] a party from taking an inconsistent position in successive or separate actions." *State v. Towery*, 186 Ariz. 168, 182, 920 P.2d 290, 304 (1996). For judicial estoppel to apply, three requirements must be met: "(1) the parties must be the same, (2) the question involved must be the same, and (3) the party asserting the inconsistent position must have been successful in the prior judicial proceeding." *Id.* (citing *Standage Ventures, Inc. v. State*, 114 Ariz. 480, 562 P.2d 360 (1977)). For reasons explained below, the third element cannot be met in this case.

■ ¶ 8 Judicial estoppel should be invoked cautiously. *See id.* at 184, 920 P.2d at 306. If a court has not accepted a party's position or assertion, "there is no risk

---

**3.** 1995 Ariz. Sess. Laws Ch. 294, §§ 2 (amending A.R.S. § 42–162(A) by deleting class twelve, possessory interests), 5 (amending A.R.S. § 42–227(A) by deleting assessment rate for class twelve property), 8 (repealing A.R.S. §§ 42–681 through 42–685 and 42–687 defining taxable possessory interests retroactively to January 1, 1995).

**4.** The action was filed pursuant to former A.R.S. section 42–177 (Supp.1998), which has been amended and renumbered as A.R.S. section 42–16207 (1999).

**5.** *See* 1994 Ariz. Sess. Laws Ch. 323, § 49(A)(5) (providing interim November 1, 1995 deadline

for filing tax appeals relating to tax years 1995 or 1996; *see also Forum Dev., L.C. v. Arizona Dep't of Revenue*, 192 Ariz. 90, 95, 961 P.2d 1038, 1043 (App.1997).

**6.** The Bank argues that its allegation in the tax court pleading, correctly interpreted, is not inconsistent with denying ownership of the improvements. We express no opinion as to the proper interpretation of the allegation in the tax court pleading, but assume for purposes of this opinion only that the allegation is inconsistent with the position taken now.

of inconsistent results." *Id.* at 183, 920 P.2d at 305. "Because the judicial process is unimpaired absent inconsistent results, and because judicial estoppel is recognized to protect the integrity of the judicial process, invocation of the doctrine is unwarranted without prior success on—or judicial acceptance of—the first position." *Id.* For purposes of judicial estoppel, a party is not considered to have been successful in a prior judicial proceeding unless (a) the court in that proceeding granted the party relief or accepted the party's earlier inconsistent position either as a preliminary matter or as part of a final disposition, and (b) the party's inconsistent position was a significant factor in the relief granted. *Id.* (citations omitted).

¶ 9 We conclude that prevailing on a motion to voluntarily dismiss a complaint does not constitute the sort of "success" necessary to trigger judicial estoppel. Rather than seeking affirmative relief, the Bank sought merely to abandon its efforts in that case. Moreover, the factual assertion at issue here was not the basis for the dismissal. The tax court had no occasion to accept or even entertain the Bank's position on the valuation claim; thus, there is no threat of inconsistent results in the superior court action. Accordingly, the Bank is not judicially estopped from alleging that it did not own the improvements.

### ii. *Judicial Admission*

¶ 10 The County alternatively argues that the Bank made a judicial admission in the tax court pleading that would bind it in this case. We disagree on this issue as well.

¶ 11 Judicial admissions bind a party in a case to the allegations made in its pleading, absent an amendment to the pleading:

[T]his is a rule not of evidence but of pleading. When the parties have framed the issues for resolution, they may not change them absent an amendment of the pleadings or trial of the issue by consent. A party so bound is often said to have made a judicial admission.

*Black v. Perkins,* 163 Ariz. 292, 293, 787 P.2d 1088, 1089 (App.1989). However, when a party seeks to use a statement made by an adverse party in a *different* proceeding, that use, if admissible at all, is not conclusive but evidentiary only. *See Fox v. Weissbach,* 76 Ariz. 91, 95, 259 P.2d 258, 260 (1953). In *Fox,* our supreme court explained the rationale for according different effect to statements made in pleadings filed in the same proceeding and statements made in different proceedings:

The pleadings in a given suit are distinguished by Professor Wigmore in their office as admissions in the action of which they are a part and their use in other causes. This distinguished authority points out that the pleadings in a suit, for the purposes of that action, are not evidence but an express waiver of controversy, a limitation of the issues. As such they are conclusive subject to the right of amendment, etc. . . . It should be borne in mind, however, that we are not here dealing with a question of the effect of a pleading in an action wherein filed but rather its evidentiary value in another suit. Unquestionably allegations contained in a pleading used in other prior causes are admissions usable as evidence. Dean Wigmore terms this use as a quasi admission and states the rule as follows:

"(1) A quasi-admission, of the present sort, being nothing but an item of evidence, is therefore *not in any sense final or conclusive.* The opponent, whose utterance it is, may none the less proceed with his proof in denial of its correctness; it is merely an inconsistency which discredits, in a greater or less degree, his present claim and his other evidence."

*Id.* (citations omitted) (quoting 4 Wigmore on Evidence § 1059 (3d ed.1940)).

¶ 12 Accordingly, the Bank is not bound in the superior court action by any statement made in the tax court pleading that it voluntarily dismissed. We express no opinion as to the admissibility of the voluntarily withdrawn tax court pleading as evidence on the merits in this case on remand. *See Buehman v. Smelker,* 50 Ariz. 18, 26–27, 68 P.2d 946, 949–50 (1937) (discussing the admissibility of an abandoned pleading).

*B. "Classification" Appeal vs. "Illegal Tax" Appeal*

¶ 13 The County next argues that the Bank's challenges to the taxing of the improvements were improperly brought as actions under former A.R.S. section 42–204(C). That section allowed challenges in superior court to taxes alleged to have been assessed "illegally":

> Except as provided in chapter 1, article 5.1 of this title,[7] within one year after payment of the first installment of the tax, an action may be maintained to recover any tax illegally collected.

A.R.S. § 42–204(C) (Supp.1998). The County argues that the Bank's claims are not properly "illegal tax" challenges, but rather are attacks on the County's "classification" of the building as a class three IPR—that is, the County posits that the Bank is really arguing that the building was *"incorrectly* taxed, not *illegally* taxed." Therefore, the County argues, the exclusive method for challenging the taxes was to bring an appeal under former sections 42–177 and 42–246 (Supp.1998). *See also* A.R.S. § 42–204(E) (Supp.1998)[8] ("Any taxpayer dissatisfied with the valuation or classification of the taxpayer's property may appeal to court only in the time and manner prescribed in § 42–177 or § 42–246, whichever is applicable."). Because the Bank would have been required to bring a tax appeal under those sections by November 1, 1995, this appeal would be untimely and the superior court would lack jurisdiction over the case.

¶ 14 We disagree. A simple yet critical distinction lies between challenging the "valuation or classification" of property in a tax appeal and challenging the legality of the imposition of any tax whatsoever under former section 42–204(C). In the former case, there is no dispute as to the County's authority to tax, but only as to the final calculation based on the classification.[9] In the latter case, a party asserts that its interest is not subject to taxation at all and the County therefore assessed a tax "not authorized by law"—that is, an "illegal" tax. *See* Black's Law Dictionary 747 (6th ed.1990). After the legislature repealed all taxation of possessory interests effective January 1, 1995, possessory interests were no longer subject to taxation. *See Airport Properties v. Maricopa County,* 195 Ariz. 89, 91 ¶ 43, 985 P.2d 574, 586 ¶ 43 (App.1999) (legislative repeal of classification of possessory interests "omits them from the state's exercise of its power to tax . . . .").

¶ 15 The County's interpretation would swallow the distinction between challenges to "illegally collected" taxes and challenges to the "valuation or classification" of taxable property. While it could be said, as the County argues, that a party challenging a tax as illegally collected must first assert that the County "misclassified" the property, such a broad reading would transform every tax appeal into an attack on the property's "valuation or classification." The argument, however, is not that the County "misclassified," but that the County taxed property that is not subject to classification at all.

¶ 16 Consequently, the County's reliance on *Cutter Aviation, Inc. v. Arizona Department of Revenue,* 191 Ariz. 485, 958 P.2d 1 (App.1997), is unavailing. In *Cutter Aviation,* taxpayers disputed the classification of their interests in buildings on City of Phoenix land at Sky Harbor Airport as class three commercial property, which was taxed at twenty-five percent of full cash value. *See id.* at 488–89, 958 P.2d at 4–5. They claimed that they did not own the buildings, but held them as class twelve or thirteen possessory interests, which were taxed at one percent of full cash value. *See id.* at 489, 958 P.2d at 5. The Court agreed with the taxpayers and held that they were entitled to a refund of the excess taxes collected. *See id.* at 493, 958 P.2d at 9. The Court further upheld the taxing of class twelve and thirteen possessory interests against a Uniformity Clause challenge. *See id.* at 497, 958 P.2d at 13.

7. A.R.S. §§ 42–179 through 42–179.06 (Supp. 1998) (amended and renumbered as A.R.S. §§ 42–16251 through 42–16257 (1999)).

8. Amended and renumbered as A.R.S. section 42–11005(D) (1999).

9. The parties agree that "classification" refers to the property's classification pursuant to A.R.S. section 42–162(A) (Supp.1998) (renumbered as A.R.S. sections 42–12001 through 42–12011 (1999)).

¶ 17 Unlike this case, however, *Cutter Aviation* dealt specifically with tax year 1993, during which possessory interests were included as a specific taxable classification under section 42–162(A) (Supp.1994). Despite the County's argument to the contrary, the Court in *Cutter Aviation* did not find that possessory interests were validly taxed absent their inclusion in the ad valorem taxation scheme. If no statute allows a tax to be assessed on a possessory interest, then any tax collected is without authority of law, and therefore is "illegally collected." *See Navajo County v. Peabody Coal Co.*, 23 Ariz.App. 101, 103, 530 P.2d 1134, 1136 (1975) (because no statutory authority existed to tax coal company's leasehold interest, the interest was not subject to taxation and therefore the County improperly levied the tax). Accordingly, the Bank properly brought its claims under former A.R.S. section 42–204(C) as a protest of an illegally collected tax.

¶ 18 We reverse the judgment and remand for adjudication of the Bank's claims on the merits.

CONCURRING: E.G. NOYES, Jr., Judge, and JON W. THOMPSON, Judge.