NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

ABC SAND AND ROCK COMPANY INC., *Plaintiff/Appellant*,

*v.*

FLOOD CONTROL DISTRICT OF MARICOPA COUNTY,
*Defendant/Appellee*.

No. 1 CA-CV 16-0294
FILED 12-21-2017

Appeal from the Superior Court in Maricopa County
No. LC 2015-000096-001
The Honorable Crane McClennen, Judge, *Retired*

**AFFIRMED**

COUNSEL

Osborn Maledon PA, Phoenix
By Colin F. Campbell, Meghan Grabel, Jana Lynn Sutton
*Counsel for Plaintiff/Appellant*

Hinshaw & Culbertson LLP, Phoenix
By Stephen W. Tully, Bradley L. Dunn
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

---

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Margaret H. Downie (retired) joined.

---

**C A M P B E L L**, Judge:

**¶1**　　　　ABC Sand and Rock Company, Inc. ("ABC") appeals the superior court's order affirming an administrative decision that ABC failed to obtain a renewed permit for its sand and gravel operations. For the following reasons, we affirm the decision of the superior court.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**　　　　This is the second appeal in the same dispute between ABC and the Maricopa County Flood Control District ("the District") concerning ABC's mining permit.[1] The District is a political taxing subdivision of the State of Arizona and is responsible for regulating floodplains. Ariz. Rev. Stat. ("A.R.S.") § 48-3603(A), (C). Pursuant to A.R.S. § 48-3613(A), a person must obtain written authorization from the District before engaging in development in a floodplain.

**¶3**　　　　In February 2011, ABC attempted to renew its operating permit to remove gravel in the Aqua Fria River floodway. ABC sent the District a $6,400 permit renewal fee, as well as a letter emphasizing that it was only seeking to summarily renew its current permit. The District, in turn, notified ABC that its application for renewal was deficient and requested additional information, including a current topographic survey, an "updated" development plan, a mining plan, and other documentation. In May 2011, the District issued ABC a notice of violation and cease and desist letter stating it had not received the required additional information and that ABC was now operating without a permit in violation of the regulations. The notice warned that if ABC continued to operate in violation of floodplain regulations, it could be subject to civil fines.

---

[1] This case was previously before this court in *Flood Control Dist. of Maricopa Cty. v. ABC Sand and Rock Co., Inc.*, 1 CA-CV 13-0450, 2014 WL 2599928 (Ariz. App. June 10, 2014) (mem. decision).

¶4        After a hearing in September 2011, a District hearing officer issued his report and recommendation, concluding ABC had been operating without a permit since May 2011. The hearing officer recommended the District both order ABC to cease operations until it obtained a permit and impose a financial penalty for the time it had been operating unpermitted. After reviewing the hearing officer's recommendation, the District's chief engineer issued his final order in November 2011 concluding ABC had never successfully renewed its permit and imposing a fine of $169,000.

¶5        ABC appealed the chief engineer's final order to the District's board of hearing review ("the Board"), which is tasked with reviewing the District's final orders. A.R.S. § 48-3603(C)(25), -3615.01(H).[2] In March 2012, the Board held a hearing, heard oral argument, met in executive session, and voted unanimously in open session to deny the chief engineer's final order. The Board provided no factual or legal bases for its decision, and in its final written order issued in June 2012, summarily denied the order of the chief engineer.

¶6        In July 2012, the District sought judicial review of the Board's June 2012 order in superior court. In May 2013, the superior court concluded it could not meaningfully review the Board's June 2012 order because of the Board's failure to provide any factual findings or legal conclusions. The superior court vacated the Board's June 2012 order and remanded with instructions that the Board "state conclusions of law of what an entity in the position of ABC must do to renew its permit," and further "make findings of fact of what ABC did in this matter to comply with the legal requirements for the renewal of its permit." ABC appealed the superior court's remand order, which this court affirmed in June 2014.

¶7        Meanwhile, ABC had filed suit against both the District and the Board in federal district court under 42 U.S.C. § 1983. *See ABC Sand and Rock Co., Inc. v. Maricopa Cty.*, 2013 WL 6059296 (D. Ariz. Nov. 18, 2013). The district court concluded that the Board had "ruled in favor of [ABC] and found that the February 2011 renewal of the . . . permit was valid and in effect[,]" and that the superior court's remand was merely for the Board to "explain its decision and make factual findings." *Id.* at \*4. The district court therefore held that ABC had not yet suffered any concrete and

_____

[2] At the time of that action, the current version of A.R.S. § 48-3615.01(H) was located under A.R.S. § 48-3615.01(G). That provision was renumbered by the Legislature, without material change, to A.R.S. § 48-3615.01(H).

particularized injury and the case was not ripe for review. *Id.* The Ninth Circuit affirmed the district court's decision in December 2015. *ABC Sand and Rock Co., Inc. v. Cty. of Maricopa*, 627 F. App'x 626 (9th Cir. 2015).

¶8        In accordance with the remand instructions from the superior court, the Board held a public vote in January 2015 and issued a more thorough order concerning the District chief engineer's final order of November 2011. The Board maintained it was bound by its governing procedures to either "uphold or deny" the District's final order, and reiterated its original denial. However, while dismissing the $169,000 fine the District had levied against ABC as arbitrary, the Board explained ABC had not successfully renewed its operating permit and a complete permit application was still needed.

¶9        ABC appealed the Board's January 2015 order to the superior court. In March 2016, the superior court upheld the Board's January 2015 order, holding that: (1) the Board did not exceed the scope of its discretion on remand; (2) substantial evidence supported the Board's decision, which was not contrary to law, arbitrary or capricious, or an abuse of discretion; (3) the District was not judicially estopped from contending ABC had no valid permit because of its arguments in the federal court action; (4) the Board did not violate Arizona's open meeting law; and (5) the Board's order was internally consistent. ABC appealed from the superior court's decision.

## STANDARD OF REVIEW

¶10        When reviewing an agency's decision, the superior court determines whether the agency action was arbitrary, capricious, or an abuse of discretion. *Gaveck v. Ariz. St. Bd. Of Podiatry Exam'rs*, 222 Ariz. 433, 436, ¶ 11 (App. 2009). In doing so, the superior court is not bound by the agency's legal conclusions but "must defer to the agency's factual findings and affirm them if supported by substantial evidence." *Id*. at ¶¶ 11-12 (citations omitted). When we review a superior court's ruling affirming an administrative decision, we engage in the same process and are bound by neither the agency's nor the superior court's legal conclusions. *Id*. at ¶ 12. If the administrative decision was based on an interpretation of law, we review it de novo. *Forest Guardians v. Wells*, 201 Ariz. 255, 259, ¶ 9 (2001).

## DISCUSSION

¶11        ABC contends the Board erred in three ways in its January 2015 order: (1) the Board abused its discretion by relying on regulations not yet in place when ABC attempted to renew its permit in 2011, and ABC properly renewed its operating permit in compliance with the regulations

effective at the time; (2) the Board is judicially estopped from contending that ABC failed to obtain a valid permit because of the District's successful legal arguments in federal court; and (3) the Board did not abide by Arizona's open meetings law, rendering its decision void.

## I.     ABC's 2011 Permit Renewal Application

¶12      ABC argues that "[t]he heart of the superior court's decision" was its summary approval of the Board's January 2015 order; specifically, ABC objects to the superior court's approval of the Board's conclusion that ABC had not successfully renewed its permit because it still needed to submit a complete permit application meeting all applicable regulations. ABC claims that it not only renewed its permit successfully in 2011 as a matter of law, but also that the Board relied on the wrong regulations in finding otherwise.

¶13      According to the version of the Floodplain Regulations for Maricopa County ("FRMC") enacted in 2006, the District requires all mining operators to obtain a permit before operating in a floodplain: "A Floodplain Use Permit shall be obtained in all delineated floodplains prior to commencing Development. . . ." FRMC § 501 (2006). The regulations mandate that a Floodplain Use Permit "for the extraction of sand and gravel or other materials within the Floodway shall be granted if the applicant shows that excavations will not have a cumulative adverse impact[,]" in addition to a number of other conditions. FRMC § 801(B) (2006). A Floodplain Use Permit "shall not exceed a five (5) year duration and may be issued for a lesser duration of time as determined by the Floodplain Administrator." FRMC § 801(B)(12) (2006).

¶14      To apply for a permit, the regulations require an applicant to "submit any information that the Floodplain Administrator considers necessary in making determinations required by these Regulations. The applicant may also be required to provide certification that all requirements of the Floodplain Use Permit have been met." FRMC § 502 (2006). The regulations make no distinction between first-time permit applications and renewal permit applications, except in the proposed fee schedule. In the 2008 revision to the fee schedule, an "Initial Permit Application" for sand and gravel operations requires a fee of $12,800, while a "Sand and Gravel Renewal (Five Year)" requires a fee of $6,400.

¶15      Because the 2006 regulations make no other distinction between the procedure for acquiring an initial permit versus acquiring a renewed permit, it was within the District's authority to demand additional

information from ABC before granting it another five-year permit. Although the disparity in fees suggests that the District may have, as a matter of practice, typically required less of an entity to renew its permit compared to the initial application, nothing in the regulations limited what the District could require from an applicant at the renewal stage. Given that the regulations further provide that, "[i]f the provisions of these Regulations conflict with or overlap with other regulations . . . the more stringent requirement or restriction shall prevail," and that regulations shall be "[l]iberally construed in favor of the governing body," FRMC § 203 (2006), it was within the District's power to deny ABC another five-year permit until it submitted the requested materials.

¶16          Therefore, the Board did not abuse its discretion nor act contrary to law in concluding that ABC did not successfully renew its permit. *See Blake v. City of Phx.*, 157 Ariz. 93, 96 (App. 1988) ("We will not substitute our judgment for that of the agency if it was persuaded by the probative force of the evidence before it. We will not substitute our judgment for that of the board, even where the question is faulty or debatable and one in which we would have reached a different conclusion had we been the original arbiter of the issues raised by the application.") (citations omitted).

¶17          ABC further argues that the Board abused its discretion by applying the wrong regulations (the 2011 regulations instead of the 2006 regulations) to support its conclusions on remand. The Board's January 2015 order states:

> The submission of application fees alone does not constitute a sufficient application and therefore there is no effective permit currently in place. *See* . . . Maricopa County Floodplain Regulations, Section 401, 403.

This provision does appear to cite to the FRMC enacted in late 2011.[3] It is unclear why the Board cited a version of the regulations not yet in place (the 2011 regulations) when ABC first attempted to renew its permit; however, the issue of whether the Board actually relied on the 2011 regulations or if the citation was a clerical error could have been raised in

---

[3] Although the 2006 regulations also contain a § 401 and § 403, those sections pertain to the allowable uses for which a Floodplain Use Permit may be granted and do not obviously relate to the Board's above conclusion of law. Sections 401 and 403 of the 2011 regulations, however, relate directly to the procedures required for obtaining and renewing permits.

the superior court. As ABC acknowledges in its reply brief, ABC did not specifically argue below that the Board relied on the wrong regulations. ABC therefore waived this argument on appeal, and—given that we have decided the Board's 2015 order was not contrary to law, *supra* ¶ 16—we decline to address it. *See, e.g.*, *Harris v. Cochise Health Sys.*, 215 Ariz. 344, 351, ¶ 23 (noting that our standard practice is to decline to address arguments raised for the first time on appeal).

## II. Judicial Estoppel

**¶18** Based on the arguments the Board put forth in federal court, ABC claims the Board was judicially estopped from concluding that its permit was not renewed.

**¶19** In November 2013, the federal district court granted the Board's motion to dismiss ABC's suit as unripe because it had not yet suffered an injury. *ABC Sand and Rock Co.*, 2013 WL 6059296 at *3-4. The district court reasoned:

> [I]n March 2012, the Review Board ruled in favor of [ABC] and found that the February 2011 renewal of the . . . permit was valid and in effect. Because [ABC's] . . . permit was found to have been renewed, and [ABC] continued to operate as usual, there would have been no deprivation of constitutional rights at that point. . . . The [superior court's] remand did not deprive [ABC] of its permit renewal. If not for [ABC's] appeal to the Arizona Court of Appeals, the Review Board likely would have explained its decision and made factual findings as ordered, and [ABC's] permit would not have been affected.

*Id.* at *4. ABC now points to the Board's reliance on the district court's reasoning on appeal to the Ninth Circuit in 2014. Specifically, ABC contends that the Board successfully argued before the Ninth Circuit that "ABC prevailed before the Review Board" and the superior court "did not reverse or reject the Review Board's decision." *See ABC Sand and Rock Co., Inc.*, 627 F. App'x 626 (affirming district court's dismissal of federal claims). ABC contends that, after its federal case was dismissed, the Board "turned around and issued its 2015 order on remand directly contradicting its arguments in federal court."

**¶20** As a general rule, "a party who has assumed a particular position in a judicial proceeding is estopped to assume an inconsistent position in a subsequent proceeding involving the same parties and questions." *State v. Towery*, 186 Ariz. 168, 182 (1996) (citations omitted).

Further, "[j]udicial estoppel is not intended to protect individual litigants, but is invoked to protect the integrity of the judicial process by preventing a litigant from using the courts to gain an unfair advantage." *Id.* (citations omitted).

**¶21** Judicial estoppel should be invoked cautiously and only when three requirements are met: (1) the parties are the same; (2) the question involved is the same; and (3) the party asserting the inconsistent position was successful in the prior judicial proceeding. *Bank of Am. Nat'l Trust and Sav. Ass'n v. Maricopa Cty.*, 196 Ariz. 173, 175, ¶ 7 (App. 1999). In regard to the third requirement, a party is not considered to have been successful in a prior judicial proceeding unless "(a) the court in that proceeding granted the party relief or accepted the party's earlier inconsistent position either as a preliminary matter or as part of a final disposition, and (b) the party's inconsistent position was a significant factor in the relief granted." *Id.* at 175, ¶¶ 7-8.

**¶22** The third requirement of judicial estoppel—that the party asserting the inconsistent position was successful in the prior proceeding—has not been met. While the district court did note that the Board's denial meant that ABC's permit was "found to have been renewed," *supra* ¶ 19, which was later proved to be inaccurate by the Board's issuance of findings of fact and conclusions of law, the district court ultimately dismissed ABC's complaint for lack of ripeness. *ABC Sand and Rock Co.*, 2013 WL 6059296 at *5. The most significant factor in the district court's decision was that ABC *continued to operate as normal* and had not yet been penalized nor suffered any deprivation of any constitutional right. *Supra* ¶ 19. Although the Board ultimately concluded in January 2015 that ABC had not successfully renewed its permit, the District enforced neither the civil fine nor further permitting requirements against ABC in the interim. The district court dismissed ABC's § 1983 claims without prejudice, explaining the issues were not ripe for decision because the validity of the permit was *still being decided* at that time: "[D]ismissing the present case for lack of ripeness will not impose hardship on [ABC] because it can assert its claims if and when they become ripe." *ABC Sand and Rock Co.*, 2013 WL 6059296 at *4. Now that the Board has declared ABC's permit was never actually renewed, ABC may presumably renew its federal claims.

**¶23** Furthermore, the second requirement of judicial estoppel is not satisfied because the question involved in the federal and state court proceedings is not the same. Although ABC claims "the question of whether ABC had successfully renewed its permit in 2011 was the exact same issue at the heart of both the federal and administrative proceedings,"

that was not the issue litigated in federal court. Rather, the federal court case was premised on an alleged § 1983 violation and was dismissed for lack of ripeness before the court could evaluate its merits. *Id.* at *3-5.

¶24 Because the District was not "successful" in the federal action and because the question involved there was not the same as the question at issue here, we decline to apply the doctrine of judicial estoppel.

## III. Open Meeting Law

¶25 After the superior court remanded the Board's June 2012 order with instructions to issue explanatory findings of fact and conclusions of law, the Board issued its new order following a public vote in January 2015. ABC argues the Board's January 2015 order is void for violating Arizona's open meeting law.

¶26 Arizona's open meeting law demands that "[a]ll meetings of any public body shall be public meetings and all persons so desiring shall be permitted to attend and listen to the deliberations and proceedings. All legal action of public bodies shall occur during a public meeting." A.R.S. § 38-431.01(A). A public body may hold an executive session—a gathering of a quorum of the public body's members from which the public is excluded—for limited purposes. A.R.S. § 38-431(2). Any legal action requiring a final vote or decision, however, "shall not be taken at an executive session" instead "[a] public vote shall be taken before any legal action binds the public body." A.R.S. § 38-431.03(D). Generally, any legal action taken by a public body in violation of these provisions is null and void. A.R.S. § 38-431.05(A).

¶27 One of the limited purposes for which a public body may meet in executive session is to discuss or consult for "legal advice" with the public body's attorney. A.R.S. § 38-431.03(A)(3). This exception is not limited to privileged or otherwise inherently confidential lawyer-client communications, *City of Prescott v. Town of Chino Valley*, 166 Ariz. 480, 483-85 (1990), but we must also "take care not to interpret 'legal advice' so broadly as to frustrate the Open Meeting Law by allowing public bodies to delegate responsibilities to attorneys and then cloak negotiations and executive sessions in secrecy by having the attorneys present," *Fisher v. Maricopa Cty. Stadium Dist.*, 185 Ariz. 116, 124 (App. 1995). The Arizona Supreme Court has summarized this exception to the open meeting law thusly:

> In short, members of a public body may meet in executive session for discussion with attorneys regarding the legal

propriety, phrasing, drafting, and validity of the proposed legislation, including its meanings, legal scope, possible legal challenges, and counsels' views regarding constitutionality, construction, and the like. However, once the members of the public body commence any discussion regarding the merits of enacting the legislation or what action to take based upon the attorney's advice, the discussion moves beyond the realm of legal advice and must be open to the public.

*City of Prescott*, 166 Ariz. at 485.

¶28 Here, the issue is not proposed legislation, but rather a more thorough explanation of a decision the Board had already made. The Board issued its original order in 2012 after hearing arguments from both the District and ABC. *Supra* ¶ 5. As ABC demanded, the Board did not reopen the issue for arguments after receiving the superior court's remand order, but merely expanded upon the decision made in 2012 by issuing explanatory findings of fact and conclusions of law. Because the phrasing, drafting, and validity of the Board's expanded order—including its meanings, legal scope, and possible legal challenges—were highly relevant to the Board's task, it was permissible to perform that task in executive session with legal advice from its attorney. Thereafter, the Board held a public vote before finalizing its January 2015 order and asking for comments from the public. We therefore conclude the Board did not violate Arizona's open meeting law.

## CONCLUSION

¶29 For the foregoing reasons, we affirm the decision of the superior court.



AMY M. WOOD • Clerk of the Court
FILED: AA