[Civil No. 3524.   Filed April 22, 1935.]

[44 Pac. (2d) 158.]

WEBER SHOWCASE AND FIXTURE COMPANY, a Corporation, Appellant, v. R. C. KAUFMAN, Appellee.

Mr. W. E. Ferguson, for Appellant.

Mr. John P. Clark, for Appellee.

LOCKWOOD, C. J.—Weber Showcase and Fixture Company, a corporation, hereinafter called plaintiff, brought a replevin action against R. C. Kaufman, hereinafter called defendant, to recover certain personal property. The case was tried to the court without a jury, and judgment was rendered in favor of defendant, whereupon this appeal was taken.

The evidence as to most of the matters necessary for a determination of this case was not in dispute and shows the facts to be as follows: Plaintiff was the original owner of the personal property involved in this action, being a more or less complete equipment for the service of soft drinks, including front and back bar, stools, carbonator, sink and drain and similar items. We shall refer to it hereafter as the fountain. At some time in the year 1931 it sold the fountain to F. M. Seigmund under a conditional sales contract, by which contract the plaintiff retained title to the property until it was fully paid for. This contract was duly recorded, as required by law. The fountain was installed by Seigmund in a café then operated by him in Winslow, Arizona, and was assessed to him for the year 1932. At some time thereafter he transferred his interest in the café, including the soda fountain, to Ralph Seigmund, and it was assessed to the latter for the year 1933. The taxes were not paid for either year, and on May 24, 1933, all the personal property of the café, including the fountain, was seized by the county assessor for nonpayment of taxes. He on the same day posted notices of the sale of the property, stating that it would be sold on the 10th day of June, 1933, and on that day did sell it. The property was offered for sale in parcels, but no bids being received, was then of-

fered as a whole and was bid in by defendant for the sum of $165, and the assessor delivered to Kaufman a bill of sale to the property and he went into possession thereof. Thereafter this action of replevin was brought.

There are five assignments of error argued under eleven propositions of law. The real question in issue, of course, is the validity of the tax sale. The first step in taxation is the assessment of the tax. This is done in Arizona primarily by the county assessor, and his duty in this respect is set forth in section 3074, Revised Code 1928, as follows:

"§ 3074. Assessments; when and how made. Between the first Monday in January and the first day in May in each year, the county assessor, except as otherwise required by the state tax commission, shall ascertain, by diligent inquiry and examination, all property in his county subject to taxation, the names of all persons owning, claiming, *or* having the possession or control thereof, determine the full cash value of all such property, and then list and assess the same to the person owning, claiming, or having the possession, charge, or control, thereof. . . . Any property discovered to have escaped assessment shall be assessed at its full cash value for the current year and each year it escaped assessment." (Italics ours.)

It will be noted that property is to be assessed to "the person owning, claiming *or* having the possession, charge or control thereof." In this case the legal title to the property was in plaintiff, but Frank Seigmund, during the year 1932, and Ralph Seigmund, during the year 1933, claimed it, and certainly had the possession, charge and control thereof. It is the well-recognized rule that property sold under a conditional sales agreement is subject to taxation as much as any other personal property, the only question being in whose name it should be assessed. Some states have held that it is the seller (*Wanee* v.

*Thomas,* 75 Cal. App. 231, 242 Pac. 509), and other states that it is the buyer who is primarily liable for the taxes thereon (*State* v. *White Furniture Co.,* 206 Ala. 575, 90 So. 896), while it is sometimes held that the state may, at its option, assess either. *Jordan et al.* v. *Baggett,* 37 Ga. App. 537, 140 S. E. 902. The latter view seems to be the reasonable implication from the terms of our statute, for its language is in the alternative. Since the property under any circumstances is liable for the same amount of tax, we can see no reason why such an interpretation will work harm to anyone. Both the vendor and the vendee are bound to know that the tax must be paid, and that it is their duty to make a return of the property which they claim for taxation, and that if such return is not made, the assessment is valid notwithstanding. As was said in the case of *Lewis Const. Co.* v. *King County et al.,* 60 Wash. 694, 111 Pac. 892, 893:

" . . . It is not claimed that the property in question was not subject to assessment, or was wrongfully assessed or assessed to any other person than the appellant, or that the taxes had been paid. It follows that the property, being taxable, is liable for the taxes levied against it. It is immaterial to the state whether the title to the property is actually in the appellant or some other person. The collecting officer is authorized to pursue the property for the tax. . . . "

We hold, therefore, that since F. M. Seigmund was in the actual possession of the property under a conditional contract of sale in 1932, the property was correctly assessed to him for that year, and since Ralph Seigmund was in possession thereof in 1933 by reason of a conveyance from F. M. Seigmund, that the assessment in his name for the year 1933 was a valid one. It appears from the record that during the year 1932 the fountain was assessed to

Frank Seigmund at the valuation of $500, no other property being included in such assessment. It also appears that in the year 1933 there was included in the assessment of Ralph Seigmund as personal property the soda fountain and café counter, tables and cooking and serving equipment, the entire personal property being assessed for $1,500, with no segregation as between the fountain and the other items. It is contended by plaintiff that this was illegal in that, when the property in question was sold, the tax on the fountain was not and could not be segregated from the tax on the other property sold, in which plaintiff was not interested. Our statutes do not expressly state to what extent personal property assessed in the name of one person shall be itemized, the only provision bearing upon that subject being found in section 3083, Revised Code 1928, which reads in part as follows:

"§ 3083. Assessment roll. The assessor shall prepare an assessment roll . . . in which shall be listed all the property . . . according to the assessment lists, . . . and showing in separate columns: . . . 5, the full cash value of all personal property taxable to each person. . . .

"No further description of personal property than herein required is necessary. . . . "

It would seem from this that an itemization of personal property assessed to one person is not required or indeed intended. It was therefore proper for the assessor in making the assessment of the property in 1933 to value all of the personal property as a whole instead of giving a separate value to each item.

We consider next the sale of the property assessed. Section 3101, Revised Code 1928, as amended by chapter 106, Session Laws 1931, describes the nature of the tax lien. It reads, so far as is necessary to a determination of the case, as follows:

"Sec. 3101. Every tax levied under the authority of this chapter upon real or personal property shall be a lien upon the property assessed. The lien shall attach on the first Monday in January in each year, and shall not be satisfied or removed until such taxes, penalties, charges and interest are all paid, or the property has finally vested in a purchaser under a sale for taxes. The lien shall be prior and superior to all other liens and encumbrances upon the property, except liens or encumbrances held by the state of Arizona. . . . ''

As we have stated, the property was assessed in 1932 at the sum of $500 and in 1933, together with other items, at the sum of $1,500, both assessments being in gross and not by items. The tax levied thereon was a lien "upon the property assessed" until paid. It is urged by plaintiff, as one of its principal contentions, that the fountain was only liable for the amount of the taxes which should have been assessed against such property and no other, but since, as we have held, the assessor was entitled to and indeed apparently required to list all the personal property assessed to one person as a whole and not to segregate it into items, as he is required to do with real estate, we think the lien for the taxes on the personal property applied to each and every item of the property so assessed. The assessor therefore had the right to seize all the property on the 24th of May, 1933, and sell it, or such portion thereof as was necessary, for the total amount of taxes assessed thereon for the years 1932 and 1933.

Did he sell it in the manner provided by law? Section 3081, Revised Code 1928, refers to the method of enforcing the payment of personal property taxes. It reads, so far as is material to the case, as follows:

"§ 3081. Personal property tax paid when assessed; enforcing payment. . . . If the owner shall neglect or refuse to pay, the assessor shall seize sufficient of

said personal property to satisfy the taxes and costs, and shall post a notice of such seizure, with a description of the property, in three public places in the county, one of which shall be in the precinct where it is seized, and shall, at the expiration of three days sell at public auction at the time and place mentioned in the notice, to the highest bidder, for cash, a sufficient quantity of said property to pay the taxes and expenses incurred and issue to the purchaser a certificate of sale. . . . ''

It appears from the record that the assessor posted the notices, as required by law, on the 24th day of May, announcing that the property would be sold on the 10th day of June, and that on said day he offered the property in parcels, but no one bidding on the parcels, he offered it as a whole, and that it was bid in by defendant. At such sale he announced that it was being sold for the taxes and expenses. The taxes amounted to $125.04 and the expenses to $3 for sale costs, and $36 for storage of the goods from the time they were seized until the day of the sale.

It is contended first that the sale was illegal in that the statute requires it to be made neither more nor less than three days after the seizure, and that it in fact was made some seventeen days thereafter. The language of the statute is that the assessor shall "at the expiration of three days" sell the property. If we are to follow the literal meaning of these words, the contention of plaintiff would perhaps be correct. We think, however, that the entire context of the section shows clearly that the legislature did not mean that the personal property must be sold upon the fourth day after the notice was posted and at no other time. If such were true, as a matter of law, there would be no occasion for any notice of the time of sale, for it would be automatically fixed by statute. We cannot imagine that the legislature meant to re-

·quire a useless thing. If, on the other hand; we hold that the phrase "at the expiration of three days" is synonymous with "not sooner than three days," there is a purpose in requiring that the time of the sale be given in the notice. Further than that, such a construction is obviously in favor of the taxpayer, for it may well be that if he is given a reasonable time he can raise the money to pay the tax.. If it be true that the statute means that the fourth day after the seizure is the only day upon which the sale may be made, it is the only instance we know of in our various statutes covering judicial and forced sales which has so rigid a provision. We hold, therefore, that the meaning of the statute is that the sale shall be made "after" the. expiration of three days, and that any reasonable time thereafter is legal, provided the other terms of the section are complied with.

██ Objection is also made that it was improper to include as part of the costs of the sale the amount paid for storage of the goods seized. The statute expressly allows the tax sale to cover the expenses of the sale, as well as the tax itself. The question then is, is storage a legitimate charge? We are clearly of the opinion that it may be such. Suppose the property seized, for example, consists of· livestock? The assessor certainly is not expected to hold them at his own cost day and night ·for the ·period which must expire before it can be sold. Neither can they be suffered to run at large. They must be kept somewhere, and a reasonable charge for their care would certainly be a legitimate expense connected with the sale. The same might be true in regard to other personal property. The assessor is bound to protect the seized property until it is sold, or he may become liable to the owner thereof in a suit for damages. We think, therefore, that a reasonable storage charge is a legitimate expense if· the

property seized is of such a nature that it must be stored in order to preserve it. The question then is whether storage was necessary and the amount charged was reasonable under the circumstances. It is most strenuously contended by plaintiff that it is not, and it is urged that the evidence shows that there was coercion, unfairness, and fraud somewhere in the proceedings. If there be any fraud, the assessor must have been a party thereto, for it could not have been practiced without his approval or consent. Certainly, with two years' taxes delinquent, he did no more than his duty in seizing the property. Of an equal certainty, after it was seized it was his duty to preserve it until it was sold, and to proceed to sell it with such reasonable diligence as might be exercised. The trial court heard the evidence and saw the witnesses. By its judgment it has necessarily held that no fraud appeared in the proceedings. The only possible question which could arise, we think, is over the seventeen days' delay in the sale and the amount of the storage paid. The assessor who made the sale testified that the reason he delayed was because he believed that the owner of the property would come forward and pay the taxes rather than to allow the sale to go on, and that the owner of the premises where the personal property was demanded the sum of $36 storage for allowing the property to remain. We cannot say that this shows, as a matter of law, that any fraud existed. A mere error of judgment on the part of the assessor as to whether the tax would be paid without the necessity of selling the property, if he delayed the sale for a few days, certainly is not *ipso facto* or even *prima facie* fraud.

▮ What we have said disposes, in substance, of all the objections raised by plaintiff's assignments of error. On the whole record, we are of the opinion

that the assessments on the property in question were made according to law; that the assessor sold it in the manner provided by the statutes; and that the purchaser at the tax sale took a good title thereto.

■ . The sellers of property under conditional sales contract in the state of Arizona are bound to know that the tax on such property must be paid, and if they neglect either to pay it themselves, or to see that the person who has come into possession of the property as a result, direct or indirect, of their voluntary acts does pay it, they are in no position to complain because the state, in order to enforce the collection of its revenue, proceeds in the manner provided by law to a sale of the property.

The judgment of the superior court of Navajo county is affirmed.

McALISTER and ROSS, JJ., concur.