409 P.2d 577

**MARICOPA COUNTY, Arizona, a body politic, B. W. Burns, Ruth A. O'Neil and L. Alton Riggs, members of the Board of Supervisors of Maricopa County, Arizona, C. L. Sparks, Assessor of Maricopa County, Arizona, and John A. Foote, Treasurer of Maricopa County, Arizona, Appellants,**

v.

**NORTH PHOENIX BAPTIST CHURCH, an Arizona non-profit religious corporation, Appellees.**

**No. 1 CA–CIV 109.**

Court of Appeals of Arizona.

Jan. 10, 1966.

Rehearing Denied Feb. 3, 1966.

Review Denied Feb. 23, 1966.

Beer & Polley, by Olgerd W. Kalyna, Phoenix, for appellants.

Milburn N. Cooper, Tom Roof, Gayle H. Nichols, Phoenix, for appellees.

DONOFRIO, Judge.

The appellee, North Phoenix Baptist Church, hereinafter also designated as the Church, brought this action under provisions of § 42–204 A.R.S. against the appellants, hereinafter designated as the County, for the refund of real property taxes assessed against the Church for the year of 1963. Both parties moved for Summary Judgment and the trial court granting plaintiff's motion rendered judgment in favor of the plaintiff and against the defendants for refund of the taxes paid under protest. The defendants bring this appeal.

The property in question was used exclusively for religious purposes during the year 1963 and the Church claimed its exemption from taxes under the provisions of § 2, Article IX of the Constitution of the State of Arizona, A.R.S. and § 42–271, subsec. 6 A.R.S. The County contends that the property, which was in possession and use by the Church, was not so exempt because of an agreement whereby the Church had agreed to sell said property.

The property consisted of three parcels of land located in the 3600 block on North Central Avenue in the City of Phoenix, which had on it a Sanctuary and other structures used exclusively for religious purposes. It had been exempt from taxation for a number of years as the North Phoenix Baptist Church. Due to the city's growth, the Church found its location surrounded by high-rise buildings and decided to move from the district. It began the planning for its future site. In order to finance the purchase of the new location and erect a church it decided to sell this property to the Standard Development Company, an Arizona corporation, hereinafter

designated as the Development Company by an agreement dated December 27, 1962. Under the terms of the agreement a purchase price of $800,000 was to be paid, $100,000 of which was to be paid immediately and $50,000 or more on or before May 1, 1963; $50,000 or more on or before December 1, 1963; $100,000 was to be paid on or before December 1, 1965, but if possession were given to buyer before that date, then on May 1, 1964, or within ten days after possession was delivered. Up to the point that possession was relinquished by buyer, the Church was not entitled to any interest on the unpaid principle balance nor was it to pay any rent. The $500,000 balance still due was to be paid in $50,000 yearly installments after possession was delivered, and this sum bore interest at the rate of 6% per annum.

Paragraph 4 of the agreement provided that the Church:

"* * * shall have the right, without payment of rent or other consideration to retain possession of said property for a period not to exceed three years from date hereof, provided, during such period of occupancy Seller shall pay, before they become delinquent all taxes and assessments on said property. * * *".

The Church also agreed to keep all buildings in good condition, not to permit waste, and to hold the buyer harmless from claims in any way connected with the property sold. The agreement provided also:

"Should any building or other improvements on said property be wholly or partially destroyed by fire or any other casualty, while Seller is in possession, it is agreed that the insurance proceeds paid with respect to any such damage or destruction shall be utilized to repair, restore or reconstruct said buildings, or used by Seller to rent other property for its use for the period of time Seller is entitled to possession of said premises hereunder * * *."

It also provided:

"At such time as Seller delivers possession of said property to Buyer, it shall become the obligation of Buyer thereafter to pay all taxes, assessments and insurance on said property. * * * All taxes, charges, assessments and premiums for fire insurance shall be pro-rated as of date Seller delivers possession to Buyer."

There were existing mortgages on the property and the agreement further provided that these were to remain the obligation of the Church who was to use such part of the purchase price paid by buyer as may be necessary to discharge the mortgage installment payments as they fell due. The Church was to make prepayment of the sum due on the mortgages to the end that these mortgages shall have been satisfied in full at such time as the purchase price shall have been paid in full. A deed to the property was delivered in escrow to the Arizona Title Insurance and Trust Company and was to be delivered only upon the completion of the terms of the agreement.

The Maricopa County Assessor thereafter placed the property on the assessment rolls, and the Board of Supervisors denying the Church's request that it be exempt levied the taxes thereon.

■ We shall first consider the question urged by appellants that in an action for refund of real property taxes all persons who have some interest in the property at the time of the tax levy must be joined as parties and that in this instance, the buyer, Development Company and its successors under the agreement of sale were indispensable parties.

Ordinarily whenever rights in real property are to be determined, all persons who make claim against the property must be joined as parties otherwise the action has no effect as to them. However, the same does not hold true in an action such as this which is brought to recover the payment of taxes made under a specific statute, which statute limits the scope of recovery.

The pertinent statute in part provides:

"After payment of the tax, an action may be maintained to recover any tax illegally collected, and if the tax due is determined to be less than the amount paid, the excess shall be refunded in the manner provided by this chapter." § 42–204, subsec. C, A.R.S. as amended.

The action is to test the legality of the tax and if found illegal the tax collected would be considered as "illegally collected".

"The action here provided is one to recover 'any tax illegally collected' and cannot be maintained until after the processes of assessment and equalization have been finished and the taxes have become due and been paid. The legality of the tax or taxes is the only question that can be inquired into or litigated in this action." Yuma County v. Arizona & Swansea R. R. Co., 30 Ariz. 27, p. 31, 243 P. 907, p. 908 (1926).

The religious exemption is provided by law. Any assessment contrary to its provisions is illegal and if levied and collected would be considered "illegally collected".

The action is also for refund to the party paying under protest that sum which is found to be illegally collected. The taxes cannot be refunded to anyone who did not pay them, and therefore the only necessary or indispensable parties to the action are the claimant who paid the taxes and the taxing authority. The Church was to pay any tax assessed and it did so by paying it under protest and receiving a receipt therefor. It alone was entitled to any refund and the County would not be liable to any third party. We hold that the Development Company and its successors under the agreement of sale were not indispensable nor necessary parties.

■ Appellants urge that the appellee should be precluded from recovering refund of the taxes by reason of the fact that it failed to pay same on or before September

15, 1963, as provided in § 42–245 A.R.S. This they contend is the provision of the Statute which it must follow. The question involved is whether the Church by bringing this action under the provisions of § 42–204 A.R.S. chose the proper method to present its objection to the taxing authority's refusal to exempt the property from taxation and whether in an action under § 42–204 the Church is required to comply with § 42–245.

Section 42–245 provides:

"A. Any person dissatisfied with his assessment as fixed by the county board of equalization may, on or before September 15 following, appeal to the superior court of the county in which the board holds its sessions by written notice to the chairman of the board served upon the clerk of the board, stating that the person appeals from the assessment made by the board and stating the particular matter from which the appeal is taken.

B. No appeal shall be taken unless appellant, before taking the appeal, pays to the county treasurer the full amount of taxes levied and assessed upon the property in accordance with the valuation fixed by the board of equalization. Such payment shall be accompanied by a written protest addressed to and filed with the treasurer, stating the reasons why the person making payment deems the amount of the assessment erroneous or excessive.

C. The treasurer shall deliver to the appellant a receipt, which shall be served upon the clerk of the board of equalization with the notice of appeal, together with a copy of the protest. Unless payment is made before taking the appeal, the appeal shall be dismissed."

We are unable to find any case on the precise question but in Valley Nat. Bank of Phoenix v. Apache County, 57 Ariz. 459, 114 P.2d 883 (1941), our Supreme Court had occasion to pass upon the section which

is now A.R.S. § 42–146. This section is similar to § 42–245, supra, and provides for appeal from the State Board of Equalization instead of the County Board of Equalization which is controlled by § 42–245. The Court therein stated that the petitioner could recover taxes paid under the procedure as set out in § 42–204 as against the contention that the appeal from the State Board of Equalization was the exclusive remedy because the objection was not to the amount of the assessment made by the Board but for another reason, apportionment of an assessment. In the instant case the Church is not questioning the amount of the assessment or of the assessment as fixed, but is objecting to the validity of the tax itself, claiming it should not have been assessed at all, the issue being whether the Church was exempt from any taxation on the property. Such objection to the legality of a tax is reviewable under § 42–204 as was the objection to the apportionment in Valley Nat. Bank of Phoenix v. Apache. More in point is County of Maricopa v. Hodgin, 46 Ariz. 247, 50 P.2d 15, 101 A.L.R. 793 (1935), where the plaintiff claimed exemption as a veteran eligible for such which was denied by the taxing authorities and brought action under the same procedure followed by the Church in the instant case. See also Yuma County v. Arizona & Swansea R. R. Co. (supra).

The statutes involved set out separate procedures. The appeal provided by § 42–245 applies where the taxpayer is dissatisfied with the amount of his assessment. In such a case the statutory appeal set forth is exclusive. In the instant case when the Church is questioning the legality of the tax the remedy is to seek relief in an action under the provisions of § 42–204 which provisions only require that the taxes sought to be refunded be paid some time prior to the commencement of the action and this action may be brought without regard to § 42–245.

The next question is whether the property involved is exempt under the provisions of

§ 2, Article IX of the Arizona Constitution and § 42–271, subsec. 6 A.R.S.

The pertinent part of the constitutional provision, supra, provides "Property of educational, charitable and religious associations or institutions not used or held for profit may be exempt from taxation by law".

Section 42–271, subsec. 6 provides:

"Churches and other buildings used for religious worship, with their furniture and equipment, and the land and improvements appurtenant thereto and used therewith, provided rent is not paid for such land or improvements, and as long as the property is not used or held for profit."

Appellants urge that under the purchase agreement equitable title and all beneficial interest vested in the buyer who held it for profit and was therefore subject to taxation.

We cite with approval the general rule as found in Kresse v. Ryerson, 64 Ariz. 291, 169 P.2d 850 (1946):

"The general rule seems to be that in the case of a binding contract of sale, the purchaser, from the time of the contract, is the equitable and beneficial owner of property. In Volume 66, Corpus Juris, pages 1052, 1053, Par. 811, in referring to the majority rule, it is stated as follows: 'Subject to certain qualifications, the rule which is supported by the weight of authority, and which is based on the proposition that a purchaser under a binding contract of sale is in equity regarded as the owner of the property, is that the purchaser is entitled to any benefit or increase of value that may accrue to the property and must bear any loss, injury or depreciation which he may sustain without fault or negligence on the part of the vendor or of either party; and if there is a valid and binding contract between the parties, the application of the rule is not affected by the fact that the purchase price has not been paid, the purchaser is not in possession, or, under the provisions of the contract, possession is not to be delivered until a date subsequent to that when the loss or injury occurred.' " 64 Ariz. 295, 169 P.2d 853.

In this connection our Court has held that conditionally sold property is subject to taxation and assessable in the name of either the buyer or seller at the option of the State. Weber Showcase & Fixture Co. v. Kaufman, 45 Ariz. 397, 44 P.2d 158 (1935).

■ Relative to this rule of law appellants contend that the purchaser Development Company and successors made no claim for exemption from taxes and that their failure to do so is a waiver, citing Pothast v. Maricopa County, 43 Ariz. 302, 30 P.2d 840 (1934); City of Phoenix v. State ex rel. Harless, 60 Ariz. 369, 137 P. 2d 783 (1943). For the reasons stated in this opinion it is only necessary for the Church to claim the exemption. In fact the Development Company could not have properly done so.

■ Were this the ordinary agreement of sale of property we would have no difficulty in agreeing with appellants. However, we have a situation clearly distinguishable from the cases cited in that the Church has carefully retained ownership, possession, use and enjoyment of the property for the period in question. A reading of the agreement, especially the terms heretofore set forth, unequivocally shows that the Church intended to retain the status quo of the property as it was. That it was to be continued exclusively for religious purposes to the exclusion of the purchaser until such time as the agreement was fully consummated by its moving into its new location. The property was not being held for profit within the meaning of the law. The Church was careful not to pass any interest to the purchaser under which it would be obligated to pay rent. It also

provided that the purchaser was not to pay any interest on the unpaid purchase price. The price for the land was fixed and the retention of the property for the specified period and purposes was agreed upon without any provision whereby the Church could derive any profit from the land. The property was "not [being] used or held for profit" as limited by our constitution and statute.

■ Although tax exemptions are not favored and will be strictly construed in favor of payment of taxes, Lois Grunow Memorial Clinic v. Oglesby, 42 Ariz. 98, 22 P. 2d 1076 (1933); State v. Yuma Irr. Dist., 55 Ariz. 178, 99 P.2d 704 (1940); Gietz v. Webster, 46 Ariz. 261, 50 P.2d 573 (1935); Conrad v. Maricopa County, 40 Ariz. 390, 12 P.2d 613 (1932); Oglesby v. Poage, 45 Ariz. 23, 40 P.2d 90 (1935), it must be conceded that the law did not intend to deny exemption to a Church which preserved exclusively for religious purposes and without the benefit of profit, its title and use in property until the time it moved to its new location which was being diligently prepared for the same religious purposes. If we view American life as expressed by its laws we find that religious worship is favored. The United States Supreme Court in Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226, involving interpretation of an Act of Congress said:

"But, beyond all these matters, no purpose of action against religion can be imputed to any legislation, state or national, because this is a religious people. This is historically true. From the discovery of this continent to the present hour, there is a single voice making this affirmation." 143 U.S. 465, 12 S.Ct. 514.

■ When the agreement in this case was recorded it was the County Assessor, Mr. Sparks' prerogative, if not duty, which he diligently pursued, to assess the property and thereby place the burden on the Church to claim and prove its exempt status. We believe that in its dictum in City of Phoenix v. State ex rel. Harless (supra) the court inferred the contrary. We do not agree with its indicating that Church ownership of property is in itself notice to the authorities that it is to be exempt. Churches frequently own properties which are used for business purposes from which they derive profits from rentals, crops or other commercial operations.

Section 42-277 A.R.S. reads:

"The provisions of §§ 42-272 through 42-276 shall not apply to the exemption from taxation of federal, state, county or municipal property, or public debts evidenced by bonds."

Clearly there is no mention of churches in the above statute.

Although § 42-272 A.R.S. provides that the State Tax Commission "shall prescribe the procedure, affidavits and forms required to carry into effect tax exemptions on property specified in § 2, article 9, constitution of Arizona" we are unable to find where this has been done. It would be well and save unnecessary confusion if the taxing authorities would outline a procedure and furnish necessary forms and affidavits to be filled out as provided by A. R.S. § 42-272 through § 42-276.

Section 42-274, A.R.S. provides that the party claiming exemption shall make affidavit to the County Assessor answering fully all questions appearing on a form provided by the County Assessor for such purpose. Section 42-275 A.R.S. provides:

"The assessor may, in his discretion, require additional proof of the facts stated by the affiant before allowing an exemption. Failure upon the part of a person entitled to exemption to make affidavit or furnish evidence as required by this article between the first Monday in January and April 30 each year shall be deemed a waiver of such exemption."

In the instant case the Church timely made its affidavit for exemption, and in the trial supported its claim by ample proof.

Judgment affirmed.

STEVENS, C. J., and CAMERON, J., concurring.