987 P.2d 815

**PIMA COUNTY ASSESSOR and Pima County, Plaintiffs–Appellees,**

v.

**ARIZONA STATE BOARD OF EQUALIZATION, an independent agency of the State of Arizona, Defendant–Appellant.**

**No. 1 CA–TX 98–0011.**

Court of Appeals of Arizona, Division 1, Department T.

Sept. 30, 1999.

Barbara Lawall, Pima County Attorney by Peter E. Pearman, Deputy County Attorney, Tucson, Attorneys for Plaintiffs–Appellees.

Janet Napolitano, Attorney General by Charles S. Pierson, Assistant Attorney General, Phoenix, Attorneys for Defendant–Appellant.

## OPINION

LANKFORD, Presiding Judge.

¶ 1 The Arizona State Board of Equalization ("the Board") appeals from a judgment of the tax court. That court accepted jurisdiction in a special action filed by Pima County and the Pima County Assessor ("the County"). The tax court ruled that the Board lacked jurisdiction to consider and rule on any taxpayer's claim of property tax error [1] concerning property on which the taxpayer had already prosecuted a tax appeal [2] for the affected tax year. The issues presented on appeal are:

(1) Did the tax court abuse its discretion in accepting special action jurisdiction?

(2) Did the tax court err in finding the Board lacked jurisdiction to hear taxpayers' claims under the error-correction tax statutes?

1. *See* Ariz.Rev.Stat. Ann. ("A.R.S.") §§ 42–16251 to –16259 (1999) (eff. Jan. 1, 1999) (formerly denominated as §§ 42–179 to –179.06 (Supp. 1998)).

2. *See* A.R.S. §§ 42–16051 to –16215 (1999) (eff. Jan. 1, 1999).

3. *See generally* A.R.S. §§ 42–12003, –12004, –15003 (1999) (class three property assessed at 25% of full cash value); *see also* A.R.S. § 42–15004 (class four property assessed at 16% of full cash value).

4. A taxpayer who believes that the county assessor has improperly assessed his property as a result of a "property tax error" may file a notice of claim with the assessor. A.R.S. § 42–16254(A)(1). An "error" includes "any mistake in assessing or collecting property taxes resulting from ... [a]n incorrect designation or description of the use of property or its classification...." A.R.S. § 42–16251(3)(b). An "error" also includes any mistake in assessing property taxes resulting from certain factual mistakes:

¶ 2 Three groups of taxpayers, none of whom are parties to this appeal, commenced and prosecuted administrative appeals for tax years 1994, 1995, and 1996. These proceedings challenged the overall valuations of parcel groupings used as shopping centers. For each tax year, each parcel grouping was valued as a single unit. The administrative appeals reduced taxpayers' valuations for their shopping centers for all of the years involved.

¶ 3 After the valuations became final, the taxpayers allegedly discovered that the vacant parts of their shopping center land exceeded the amount necessary for parking or related uses. They argued that this was "excess" land that should have been classified as class four rather than class three (commercial) property.[3]

¶ 4 Each taxpayer group had successfully petitioned the Pima County Assessor to adjust the classification and assessment ratio for its shopping center for the 1998 tax year to take account of the discovery of this excess land. The taxpayers had asked the assessor to reclassify the "excess land" portions of their shopping centers from class three to class four for tax years 1994, 1995, and 1996. They relied on the predecessors of Arizona Revised Statute Annotated ("A.R.S.") sections 42–16251, –16254, and –16255 (1999).[4] The assessor denied each

Subject to the requirements of [section] 42–16255, subsection B, a valuation that is based on an error that is exclusively factual in nature or due to a specific legal restriction that affects the subject property and that is objectively verifiable without the exercise of discretion, opinion or judgment and that is demonstrated by clear and convincing evidence, such as:

(i) A mistake in the description of the size, use or ownership of land, improvements or personal property.

(ii) Clerical or typographical errors in reporting or entering data that was used directly to establish valuation.

(iii) A failure to timely capture on the tax roll a change in value caused by new construction, destruction, demolition or splitting or consolidating interests in real property existing on the valuation date.

(iv) The existence or nonexistence of the property on the valuation date.

(v) Any other objectively verifiable error that does not require the exercise of discretion, opinion or judgment.

claim, noting that "[d]ue to prior year(s) appeals, not eligible for correction."

¶ 5 The taxpayers next petitioned the Board for relief under A.R.S. section 42–16254(F). The Board ruled in the taxpayers' favor and granted reduced classification ratios (assessment percentages higher than 16% but lower than 25%).

¶ 6 The County filed combined petitions for special action and tax appeal complaints from the Board's rulings. The tax court accepted jurisdiction in the County's special action and held that the Board had exceeded its jurisdiction in granting relief to the taxpayers.

¶ 7 The Board appeals from the judgment. The taxpayers are not parties to the appeal. This Court has jurisdiction pursuant to A.R.S. section 12–2101(B) and (D) (1994).

 ¶ 8 The first issue presented is whether the tax court abused its discretion in accepting jurisdiction. We review a trial court determination to accept or decline jurisdiction in a special action for an abuse of discretion. *See, e.g., Amos v. Bowen,* 143 Ariz. 324, 327, 693 P.2d 979, 982 (App.1984); *Bilagody v. Thorneycroft,* 125 Ariz. 88, 92, 607 P.2d 965, 969 (App.1979).

¶ 9 The Board admits that if this Court holds the tax court lacked special action jurisdiction, the likely result would be a second appeal on the merits following the Board's intervention in the statutory appeal. Given the discretionary nature of the tax court's decision to accept special action jurisdiction, the avoidance of waste of time and judicial resources provides adequate justification for the tax court's decision to accept special action jurisdiction. The tax court did not abuse its discretion.

¶ 10 The second issue presented is whether the tax court erred in finding the Board lacked jurisdiction to hear taxpayers' claims. Our review of such issues of law is de novo. *See Transportation Ins. Co. v. Bruining,* 186 Ariz. 224, 226, 921 P.2d 24, 26 (1996).

¶ 11 In its ruling, the tax court relied on A.R.S. section 42–16255(B).[5] The court reasoned in part:

> This court construes the second sentence [of the predecessor of A.R.S. section 42–16255(B) ] to mean that while an administrative or judicial appeal is pending on the subject property, if an error appears to have been made in the valuation or classification, then the issue of the alleged error will be settled as a part of that appeal. The provision cannot be construed to allow a separate error-correction proceeding once a final decision has been issued.
>
> . . . .
>
> [S]ection 42–176(G) [now A.R.S. section 42–16169] provides that "[a]ny decision of the state board of equalization pertaining to the valuation or classification of property is final when an appeal has not been

---

A.R.S. § 42–16251(3)(e).

Section 42–16255(B) provides that sections 42–16251 to –16259 do not authorize independent administrative or judicial reviews of the "overall valuation of property" that could have been raised in a real or personal property tax appeal, and that "[i]f an administrative or judicial appeal is pending regarding the subject property, the alleged error shall be adjudicated as part of the administrative or judicial appeal for the affected tax year."

If the county assessor disputes a notice of claim, the county assessor is to notify the taxpayer of the time and place for a meeting to discuss the basis of the dispute. *See* A.R.S. § 42–16254(D). If the parties disagree in whole or in part, the taxpayer may file a petition with the County Board of Equalization, if any, or the State Board of Equalization within 150 days after the notice of claim was filed. The Board must hear the petition within thirty days and must issue a written decision. *See* A.R.S. § 42–

16254(F). In any such hearing "either party may present any evidence regarding property tax errors regardless of whether a notice of error or notice of claim was filed." A.R.S. § 42–16255(A).

A party dissatisfied with the Board's decision may appeal to the superior court or tax court within sixty days of the mailing of the Board's decision. The court will not retain jurisdiction of a taxpayer's appeal unless the taxpayer timely pays before delinquency any additional taxes determined to be due because of the Board's decision and pays any other taxes levied and assessed for the tax year before the taxpayer files the appeal action. *See* A.R.S. § 42–16254(G).

5. "If an administrative or judicial appeal is pending regarding the subject property, the alleged error shall be adjudicated as part of the administrative or judicial appeal for the affected tax year." A.R.S. § 42–16255(B).

taken within the time prescribed by this section." Because the taxpayers failed to appeal in a timely manner, the Board's decision was final. Nothing in A.R.S. [section] 42–179.04(B) [now A.R.S. section 42–16255(B)] or any of the provisions in sections 179 through 179.06 [now sections 42–16251 through 42–16257] confer jurisdiction on the Board to entertain error-correction claims after it has issued a final decision with respect to the property.

The court effectively read that provision as foreclosing from an error-correction proceeding any issue pertaining to the valuation or classification of property that a taxpayer had appealed. The tax court found further support in A.R.S. section 42–16169, under which a decision of the Board becomes "final" if not appealed as provided in that section.

¶ 12 Necessary to our decision is an understanding of the nature of the taxpayers' claims. The tax court's minute entry ruling characterized the taxpayers' notices of claim under A.R.S. section 42–16254(A)–(B) as seeking to correct errors in property "valuation." However, the notices of claim sought no such relief.

¶ 13 Each taxpayer group filed its notice of claim with the County on a Department of Revenue form. Under the heading "Statement of Claim and Opinion of Value for all Parcels," one taxpayer group stated, "Subject property has excess land of 5,400 sf. Land ratio should be 24.2%." To the immediate right of this statement the taxpayers provided a table for tax years 1994–96 that showed the property's current full cash and limited property values and "Legal Class 3/4" and "Asst Ratio 24.2." As completed by the taxpayers, the form neither requested a new determination of full cash value nor stated what the taxpayers contended the true full cash value should be. Except for the details of property sizes, land ratios, and existing full cash and limited property values, the notices of claim filed by the remaining two taxpayer groups were virtually identical. The taxpayers requested a reclassification of their land, not a correction of a valuation error. Therefore, the tax court's ruling was based on an incorrect understanding of the nature of the taxpayers' claims. The tax court viewed the taxpayers' claims as a request for revaluation rather than a reclassification.[6] The tax court then interpreted the error-correction statutes to say that once a taxpayer prosecuted an appeal for a particular tax year, and that decision became final, the error-correction statutes did not afford the taxpayer a remedy for a later-discovered valuation error.

¶ 14 The error-correction statutes, A.R.S. sections 42–16251 to –16259, permit relief

---

6. The County also contended that the taxpayers' claims related to valuation. On appeal, the County asserts that changing the classification of the vacant portions of the taxpayers' properties would require revaluation of the entire property, not just the reclassified portion. Therefore, the County claims that the errors the taxpayers define as classification errors, and seek to remedy, are actually valuation errors. Moreover, the County asserts that valuation errors do not fall within the definition of "error" in the error-correction statutes because valuations are not "objectively verifiable without the exercise of discretion, opinion or judgment...." A.R.S. § 42–16251(3)(e). Moreover, the first sentence of A.R.S. section 42–16255(B) explicitly forbids the use of the error-correction procedure of sections 42–16251 to –16259 to obtain "an independent review of the overall valuation of property that could have been appealed...." The County accordingly argues that the error-correction procedure was unavailable to the taxpayers, and the Board had no jurisdiction to grant them relief.

Conversely, the tax court based its ruling on a different ground. It ruled that any error-correction claim that a taxpayer fails to assert in a tax appeal filed for the same tax year is ineligible as a matter of law for relief under A.R.S. sections 42–16251 to –16259. The tax court did not rule on the County's theory that the alleged mistakes on which the taxpayers sought relief were within the "error" definition of A.R.S. section 42–16251(3).

Because the tax court did not rule on the County's theory—that the nature of the taxpayers' claim does not fit the definition of error in the error-correction statutes—the County's argument on this topic supports a portion of the judgment that is not before this Court. Only the Board has appealed from the judgment. Because the taxpayers did not join in the appeal, the judgment was, and is, final as to taxpayers. No matter what its ultimate result, this appeal cannot entitle the taxpayers to seek further relief from the tax court or the Board on their error-correction claims for 1994–96. The Board could not pursue the taxpayers' interests in the administrative or judicial arenas on remand even in the unlikely event that it wished to do so. Therefore, we decline to consider whether the particular errors asserted by the taxpayers were outside the scope of the error-correction statutes.

from classification errors. In those statutes and their antecedents, the Legislature intended to permit any tribunal properly presented with an error-correction claim to remedy property tax "errors" when appropriate to do so in the interest of justice.

¶ 15 These statutory sections are remedial. As the enacting Legislature announced:

> The purpose of section 27[7] of this act is to provide a simple and expedient procedure for correcting of errors occurring in assessing or collecting property taxes, whether they inure to the benefit of the taxpayer or the government. The present statutes do not provide such a procedure and because of conflicting court interpretations of such laws, the purpose of section [27][8] of this act is to provide such a mechanism and to make it work for both taxpayers and the taxing authorities. Because of budget limitations and other constraints, it is necessary to limit the scope of such legislation and to prescribe a time limit within which such claims may be asserted and after which they are forever barred.

1994 Ariz. Sess. Laws, ch. 323, § 53.

■ ¶ 16 The content of A.R.S. sections 42–16251 to –16259 confirms availability of the error-correction remedy. Sections 42–16251(3) and –16256 establish comprehensive substantive and temporal limits on error-correction relief. None of those limits depends on whether the affected taxpayer has previously prosecuted an administrative or judicial appeal pertaining to the same property.

¶ 17 Nor does A.R.S. section 42–16255(B) create such a limitation. We interpret the second sentence of that subsection differently than did the tax court. Section 42–16255(B) reads: "If an administrative or judicial appeal is pending regarding the subject property, the alleged error shall be adjudicated as

part of the administrative or judicial appeal for the affected tax year."

■ ¶ 18 We read the term "pending" as having its plain meaning. Black's Law Dictionary defines "pending" as:

> Begun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment. Awaiting an occurrence or conclusion of action, period of continuance or indeterminacy. Thus, an action or suit is "pending" from its inception until the rendition of final judgment.

Black's Law Dictionary 1134 (6th ed.1990); *see also* Merriam–Webster's Tenth Collegiate Dictionary 858 (1999) (defining "pending" similarly). Once a tax appeal becomes final, it is, by definition, no longer "pending."

¶ 19 Thus, A.R.S. section 42–16255(B) does not say that errors must be raised during the pendency of a statutory appeal or be forever barred. Instead, it merely states that if an error is raised while an appeal is pending, it must be adjudicated in that appeal. That leaves open the possibility that an error raised after the appeal is concluded can be adjudicated separately as an error-correction issue.

■ ¶ 20 The County nevertheless contends that it is more sensible to preclude error-correction claims whenever a statutory appeal has been brought. The County argues:

> Appellant, both in the Tax Court and its opening brief, argues that Appellees have ignored the word "pending" in their analysis. Appellant then argues that the appropriate interpretation should be that if an appeal has been filed on the property and the decision is final, it is no longer pending and therefore there is no prohibition against a taxpayer filing a [section] 42–179 [A.R.S. sections 42–16251 to –16259] claim.

---

7. 1994 Ariz. Sess. Laws, ch. 323, § 27, enacting former A.R.S. §§ 42–179 to –179.05.

8. Although the actual text refers to section 31, we believe this was in error, and should instead have referred to section 27, similar to the preceding sentence which established special notice and review deadlines for administrative and judicial

appeals from valuations in the case of new construction, additions to or deletions from assessment parcels, and changes in use that occur after January 1 of the valuation year. *See generally Forum Dev., L.C. v. Arizona Dep't of Revenue,* 192 Ariz. 90, 93–95, 961 P.2d 1038, 1041–1043 (App. 1997) (discussing transition to new tax valuation and appeal system).

Appellees submit, however, that Appellant's interpretation would allow a taxpayer to file an appeal, take it through the appeal process, receive a final decision, and then if dissatisfied, begin a whole new round through the error-correction statutes. A more rational interpretation of that statute would be that if another proceeding on the same property for the same tax year is pending, then the taxpayers are required to bring all their claims involving that property in that action. This is certainly consistent with the doctrine of *res judicata* and the express language contained in A.R.S. [section] 42–176(G) [A.R.S. section 42–16169], which makes final all the decisions of the State Board of Equalization in which a timely appeal has not been filed.

We are unpersuaded by the County's finality and *res judicata* arguments. Under the doctrine of *res judicata*, a valid final judgment is conclusive on the parties or their privies as to every issue decided and every issue raised by the record that the court could have decided. *See Day v. Estate of Wiswall*, 93 Ariz. 400, 402, 381 P.2d 217, 219 (1963); *Heinig v. Hudman*, 177 Ariz. 66, 71, 865 P.2d 110, 115 (App.1993). If *res judicata* is applicable to the controversy in this case, the taxpayers' error-correction claims under A.R.S. sections 42–16251 to –16259 were barred.

 ¶ 21 Whether *res judicata* applies in the context of the error-correction statutes depends on the Legislature's intent in enacting those statutes. *See, e.g., Hibbs v. Calcot, Ltd.*, 166 Ariz. 210, 215–16, 801 P.2d 445, 450–51 (App.1990). *Res judicata* generally applies to valid and final adjudicative determinations by administrative tribunals. *See id.* (citing Restatement (Second) of Judgments ("Restatement") § 83(1) (1982)). But this principle is subject to the exception stated in Restatement section 83(4):

An adjudicative determination of an issue by an administrative tribunal does not preclude relitigation of that issue in another tribunal if according preclusive effect to determination of the issue would be incompatible with a legislative policy that:

(a) The determination of the tribunal adjudicating the issue is not to be accorded conclusive effect in subsequent proceedings; or

(b) The tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question.

*See Hibbs,* 166 Ariz. at 215–16, 801 P.2d at 450–51.

 ¶ 22 We think the exception applies. Applying *res judicata* to error-correction claims would automatically merge such claims into a tax appeal, regardless of whether the claims of error are real or potential, known or unknown, knowable or unknowable at the time. Such an approach is manifestly at odds with the remedial thrust of the error-correction statutes.

¶ 23 That interpretation of the statutes would also subject property owners to arbitrarily different statutory limitations periods. A taxpayer who had no appealable claim other than his error-correction claim would have three years to discover the error and file a notice of claim. *See* A.R.S. § 42–16256(B). A taxpayer who had a separate appealable claim and timely asserted it, however, would have to discover and assert his error-correction claim according to the limit applicable to his separate claim. *See* A.R.S. §§ 42–16051, –16056(C), –16105(C), –16157(A), –16201 to –16204. We do not believe that the Legislature intended to draw such an inexplicable distinction.

¶ 24 The finality language of A.R.S. section 42–16169 also fails to persuade us that error-correction claims are precluded. The general finality of a judicial or administrative judgment from which no party timely appeals is undoubted. However, finality is not absolute and immutable. For example, a judgment entered in accordance with Rule 58, Arizona Rules of Civil Procedure, is final once the time for appeal has expired. A court may nevertheless modify or renounce it in proceedings properly commenced and supported under Rule 60(c). The error-correction provisions of A.R.S. sections 42–16251 to –16259 were intended to function in an analogous way. The general finality lan-

guage in A.R.S. section 42–16169 does not compel a contrary conclusion.

¶ 25 Our interpretation best reconciles the remedial function of the statutes with prevention of claim-splitting or other taxpayer abuses. Section 42–16256(A) allows an owner of real or secured personal property to seek correction of "errors" limited to the period during which the owner held title to the property "if the owner is a purchaser in good faith and without notice of any error that could have caused proceedings to be initiated to correct the tax roll when the owner purchased the property." Implicit in this provision is a requirement that taxpayers not delay in seeking redress if they are aware of, or ought to be aware of, errors.

¶ 26 We accordingly infer two principles in the error-correction scheme. First, if the taxpayer knew of or reasonably should have discovered an "error" within A.R.S. section 42–16251(3) in sufficient time to assert it through a tax appeal, then sections 42–16251 to –16259 cannot later provide a remedy. Second, if the "error" has escaped the taxpayer's attention despite the exercise of reasonable care to discover it in time, sections 42–16251 to –16259 can provide a remedy regardless of whether the taxpayer prosecuted a tax appeal for the tax year in question. This interpretation construes the second sentence of section 42–16255(B) in a way that gives meaning to all its words. Thus, our interpretation remains true to the remedial intent of the error-correction statutes without opening the door to manipulation and abuse.

¶ 27 Therefore, the judgment is reversed and remanded with directions to modify the judgment in accordance with the views expressed in this opinion.

CONCURRING: CECIL B. PATTERSON, JR., Judge, and PHILIP E. TOCI, Judge.