OPINION
 

 TIMMER, Judge.
 

 ¶ 1 Under the property tax error-correction statutes, Arizona Revised Statutes (“A.R.S.”) sections 42-16251 through-16258 (1999 & Supp.2004), the State Board of Equalization is authorized to correct errors made by specified tax officials within a three-year period. Ariz.Rev.Stat. (“A.R.S.”) §§ 42-16254(A), (F), -16256(B) (1999 & Supp.2004). We decide in this appeal whether the tax court correctly ruled that these provisions do not authorize the Board to decide whether a county assessor properly rejected a taxpayer’s request for a real property tax exemption. For the reasons that follow, we disagree with the tax court’s decision and therefore reverse.
 

 BACKGROUND
 

 ¶ 2 Eastside Assembly of God (“Taxpayer”) owns real property in Tucson. In January 2000, Taxpayer filed an affidavit with Pima County Assessor Rick Lyons (“Assessor”) claiming a property tax exemption for religious property for tax year 2000 pursuant to A.R.S. § 42-11109(A) (1999). Taxpayer stated that an exemption was warranted because later that year it planned to use the house on the property as a parsonage. In August, Assessor denied the exemption request because “ownership and usage must be in effect as of the lien date January 1st.”
 

 ¶ 3 In January 2001, Taxpayer filed an affidavit for a property tax exemption for tax year 2001 on the same basis as asserted in the prior affidavit. The affidavit does not reflect whether the house on the property was then being used as a parsonage. The following October, Assessor denied the exemption request, stating that his office had reviewed submitted information but would “remain with the denial of property tax exemption.”
 

 ¶ 4 In August 2002, Taxpayer initiated proceedings under the error-correction statutes by filing two notices of claim with Assessor pursuant to A.R.S. § 42-16254(A). The basis for Taxpayer’s claims was that Assessor had erred by denying the affidavits for exemption for tax years 2000 and 2001 because Taxpay
 
 *489
 
 er held the property “primarily for religious worship.” Assessor disputed the notices of claim, stating that such notices were “not appropriate for this type of situation,” and alternatively declaring that “the property does not meet the qualifications for Property Tax Exemption.”
 

 ¶ 5 After Taxpayer and Assessor failed to resolve their dispute through a personal meeting required by the error-correction process, A.R.S. § 42-16254(D), (E), Taxpayer filed petitions in November 2002 with the Board pursuant to § 42-16254(F). Taxpayer asserted that its property was held primarily for religious worship and should therefore be tax exempt for tax years 2000 and 2001. A few weeks later, after denying Assessor’s motion to dismiss the petitions, the Board decided that Taxpayer’s “use of the property complie[d] with the exemptions granted by the state constitution” and therefore granted the property exemption status for the tax years at issue.
 

 ¶ 6 Assessor filed a “Petition for Special Action, Complaint, and Notice of Appeal” with the Arizona Tax Court contesting the Board’s decision. That court ruled as a matter of law that “the SBOE [State Board of Equalization] has no jurisdiction or authority to hear and decide exemption issues” and that “the error correction procedures are not the proper procedures to appeal the denial of an exemption.” Accordingly, the tax court entered judgment in favor of Assessor and vacated the Board’s decisions. The Board, but not Taxpayer, thereafter appealed the tax court’s decision. We review the court’s ruling de novo as an issue of law.
 
 Pima County Assessor v. Arizona State Bd. of Equalization,
 
 195 Ariz. 329, 332, ¶ 10, 987 P.2d 815, 818 (App.1999).
 

 DISCUSSION
 

 ¶7 The Board argues the tax court erred in its ruling because A.R.S. § 42-16254(A) confers authority on the Board to correct errors made by Assessor concerning property tax exemption decisions. Assessor counters that exemption decisions are not subject to correction under § 42-16254 and can only be appealed to the tax court pursuant to A.R.S. § 42-11005 (1999) as an “illegal tax” after collection of that tax. Resolution of this issue turns on an interpretation and interplay of various tax provisions.
 

 ¶ 8 The cardinal rule of statutory interpretation is to ascertain the legislature’s intent in adopting the provision.
 
 City of Phoenix v. Superior Court,
 
 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984). To determine the legislature’s intent in enacting a statute we look first to the provision’s language,
 
 Calmat of Arizona v. State ex rel. Miller,
 
 176 Ariz. 190, 193, 859 P.2d 1323, 1326 (1993), and will ascribe plain meaning to its terms unless the legislature assigned a special meaning to one or more terms.
 
 State v. Korzep,
 
 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). If the legislative intent is unclear, we then employ other methods of statutory construction,
 
 Bilke v. State,
 
 206 Ariz. 462, 464, ¶ 11, 80 P.3d 269, 271 (2003), including a consideration of related provisions.
 
 Goulder v. Arizona Dep’t of Transp., Motor Vehicle Div.,
 
 177 Ariz. 414, 416, 868 P.2d 997, 999 (App.1993) (“Statutes relating to the same subject matter should be read
 
 in pari materia
 
 to determine legislative intent and to maintain harmony.”).
 

 ¶ 9 Section 42-16254 provides, in pertinent part, as follows:
 

 A. If a taxpayer believes that the taxpayer’s property has been assessed improperly as a result of a property tax error, the taxpayer shall file a notice of claim with the appropriate tax officer, either personally or by certified mail, as follows:
 

 1. If the alleged error concerns the valuation or classification of property by the county assessor, the notice shall be filed with the assessor.
 

 Within 60 days of receiving the notice of claim, the assessor may respond in writing to the taxpayer either consenting to or disputing the error, or concede the error by taking no action. A.R.S. § 42-16254(C). If the assessor disputes the claim, the parties must meet to attempt to resolve the claim. A.R.S. § 42-16254(D). If the parties agree on all or part of a proposed correction, the county board of supervisors will “direct the county
 
 *490
 
 treasurer to correct the tax roll to the extent agreed.” A.R.S. § 42-16254(E). Additionally, any overpaid taxes shall be refunded with interest and any taxes determined to be owed by the taxpayer shall be paid with interest.
 
 Id.
 
 If the parties fail to reach an agreement, within 150 days of the meeting the taxpayer may petition the Board for relief. A.R.S. § 42-16254(F). The Board must then convene a hearing within 30 days and issue a written decision.
 
 Id.
 
 Any party dissatisfied with the decision may appeal to the tax court within 60 days. A.R.S. § 42-16254(G).
 
 [1]
 

 ¶ 10 The issue in this case is whether an error in denying an exemption request is subject to correction under these provisions. “Error” for purposes of § 42-16254 is defined in pertinent part as follows:
 

 “Error” means any mistake in assessing or collecting property taxes resulting from:
 

 (b) An incorrect designation or description of the use of property or its classification pursuant to chapter 12, article 1 of this title [A.R.S. § 42-12001 et seq.].
 

 (e) Subject to the requirements of § 42-16255, subsection B, a valuation that is based on an error that is exclusively factual in nature or due to a specific legal restriction that affects the subject property and that is objectively verifiable without the exercise of discretion, opinion or judgment and that is demonstrated by clear and convincing evidence
 

 A.R.S. § 42-16251(3) (Supp.2004).
 

 ¶ 11 The Board argues that Taxpayer’s claim concerned an alleged error in the use and classification of property, thereby entitling the Board to correct any error under the plain language of A.R.S. §§ 42-16254, - 16251(3)(b). Specifically, it contends Taxpayer sought to change Assessor’s classification of the real property and improvements from a mixed use of vacant and residential land (currently classes 2 and 3) to property owned and controlled by a nonprofit organization which is exempt from taxation under § 501(c)(3), (4), (7), (10) or (14) of the Internal Revenue Code and which uses any financial benefit derived from the property for religious purposes (currently class 2). A.R.S. §§ 42-12002, -12003 (Supp.2004). The Board also asserts that Taxpayer sought to correct the assigned “use code” for the property from residential use to religious property exempt from taxation.
 
 See
 
 A.R.S. § 42-11109(A) (providing real property and improvements used or held primarily for religious worship exempt from taxation if property not used or held for profit).
 

 ¶ 12 Assessor contests the Board’s position on several bases. First, Assessor contends that an incorrect decision to deny an exemption request is neither an improper assessment of property, A.R.S. § 42-16254(A), nor a mistake in assessing property taxes, A.R.S. § 42-16251(3), and is therefore not subject to correction under the error-correction provisions. Resolution of this argument turns on the meaning of the term “assess.”
 

 ¶ 13 Assessor asserts that the legislature intended the term “assess” to mean the process of valuing property for purposes of the tax roll, and consequently limited applicability of the error-correction statutes to that process. Although the legislature did not define the term “assess,” Assessor points out that in other provisions the legislature used the term in tandem with valuation concepts, thereby evidencing an intent to apply a similar connection in the error-correction statutes.
 
 See
 
 A.R.S. § 42-11001(1) (Supp.2004) (defining “assessed valuation” as value derived by applying a specified percentage to the full cash value or limited property value of property); A.R.S. § 42-15051 (1999) (providing property “assessed” for taxes when value determined and placed on tax roll). Because all property, including tax exempt property, must be assessed for value and placed on the tax roll, A.R.S. § 42-15152(A) (Supp.2004), Assessor concludes that exemption decisions are distinct from valuation de
 
 *491
 
 cisions and are not subject to correction under the error-correction statutes.
 

 ¶ 14 The Board counters that Assessor improperly ignores the common meaning of “assess,” and we agree. Unless statutory words are technical or have acquired a peculiar meaning within the law, we construe them using their common meanings. A.R.S. § 1-213 (2002). The record does not reflect, and Assessor does not assert, that “assess” is a technical word or holds a peculiar meaning within the law. We therefore apply its common meaning, which includes “to set or fix a certain sum against, as a tax, fine, or special payment.”
 
 Webster’s New Universal Unabridged Dictionary
 
 112 (2d ed.1983). This definition is consistent with the legislature’s explicit definition of “error” as “any mistake in assessing ... property taxes” resulting from specified actions. A.R.S. § 42-16251(3). We therefore apply the common meaning of “assess” to A.R.S. § 42-16254(A) and conclude a taxpayer may initiate proceedings under that provision to correct errors that resulted in an improper assessment of tax. In light of our conclusion, we need not address Assessor’s alternative assertion that an incorrect exemption decision cannot be a “mistake in ... collecting property taxes,” A.R.S. § 42-16251(3), because tax collection takes place after determining the amount of taxes owed.
 

 ¶ 15 Assessor next argues that the error-correction statutes apply only to factual errors defined as “objectively verifiable without the exercise of discretion, opinion or judgment.” A.R.S. § 42-16251(3)(e). It then contends that exemption decisions are discretionary and therefore are not subject to correction under the error-correction statutes. But Assessor incorrectly relies on the definition of “error” applicable to valuation decisions and ignores § 42 — 16251(3)(b), which concerns use and classification decisions.
 
 See supra
 
 ¶ 10. The definition of “error” under § 42-16251(3)(b), which the Board relies upon, does not require that an error be factual in nature or objectively verifiable. We therefore reject Assessor’s argument.
 

 ¶ 16 Assessor also contends we cannot construe the error-correction statutes as granting authority to the Board to correct exemption decisions because A.R.S. § 42-11005 (1999) provides the exclusive procedure for challenging such decisions. Section 42-11005 provides in relevant part as follows:
 

 A. Except as provided in chapter 16, article 6 of this title [the error-correction statutes], within one year after payment of the first installment of tax, an action may be maintained to recover any tax that was illegally collected.
 

 D. Any taxpayer who is dissatisfied with the valuation or classification of the taxpayer’s property may appeal to court only in the time and manner prescribed in chapter 16 of this title.
 

 Assessor argues that a taxpayer’s objection to the denial of an exemption request is a challenge to the legality of a tax, which is properly raised under § 42-11005.
 

 ¶ 17 We agree that taxpayers can challenge exemption denials in actions to recover taxes illegally collected. In
 
 Maricopa County v. N. Phoenix Baptist Church,
 
 2 Ariz.App. 418, 419, 409 P.2d 577, 578 (1966), the taxpayer-church filed a lawsuit under a former version of § 42-11005 seeking a refund of taxes assessed against church property used exclusively for religious purposes during the relevant tax year. In deciding whether the Maricopa County Board of Supervisors correctly denied the church’s exemption request, this court held that collection of taxes against exempt property would be considered “illegally collected,” and therefore properly challenged under § 42-11005.
 
 N. Phoenix Baptist Church,
 
 2 Ariz.App. at 420, 409 P.2d at 579;
 
 see also Bank of Am. Nat’l Trust and Sav. Ass’n v. Maricopa County,
 
 196 Ariz. 173, 178, 993 P.2d 1137, 1142 (App.1999) (holding that if no statute allows tax on a possessory interest then tax on that interest is “illegally collected” and properly challenged under § 42-11005). The question remains, however, whether § 42-11005 provides the exclusive vehicle for challenging exemption denials.
 

 ¶ 18 We are not persuaded that § 42-11005 provides the exclusive procedure for challenging an assessor’s denial of an exemption request. First, § 42-11005 does not
 
 *492
 
 state that its remedy is exclusive. Indeed, subsection (A) provides that proceedings initiated under the error-correction statutes are excepted from the one-year limitation period for filing an action to recover a tax illegally collected.
 

 ¶ 19 Second, construing § 42-11005 in the manner advocated by Assessor would create an anomaly.
 
 [2]
 
 A taxpayer seeking an exemption for religious property must file an affidavit of eligibility with the county assessor in January or February of the tax year or waives the exemption. A.R.S. §§ 42-11152, -11153 (Supp.2004). However, a nonprofit organization which fails to timely file an affidavit, but otherwise qualifies for the exemption, may petition the county board of supervisors to direct the county treasurer to refund taxes or forgive and strike off from the tax roll any unpaid property taxes and accrued interest and penalties. A.R.S. § 42-11109(E). The exemption provisions do not specify any review procedure of an exemption denial by the assessor made after a taxpayer timely filed an affidavit.
 

 ¶ 20 If we agree with Assessor’s reading of § 42-11005, dissatisfied taxpayers who timely comply with the exemption-statute requirements must pay the tax and challenge the assessor’s decision in the tax court, while taxpayers who do not timely comply with the exemption-statute requirements may obtain administrative relief without paying the tax or filing a lawsuit. In short, a taxpayer who ignores the affidavit requirement has more options for relief than the compliant taxpayer. Such an interpretation would produce absurd results, which we assume the legislature did not intend.
 
 State v. Medrano-Barraza,
 
 190 Ariz. 472, 474, 949 P.2d 561, 563 (App.1997) (“We presume the framers of the statute did not intend an absurd result and our construction must avoid such a consequence.”).
 

 ¶ 21 Finally, construing § 42-11005 as a non-exclusive procedural device for challenging an exemption decision furthers the remedial purpose of the error-correction statutes.
 
 See
 
 A.R.S. § 1-211(B) (2002) (“Statutes shall be liberally construed to effect their objects and to promote justice.”). The enacting legislature stated that the purpose of the error-correction statutes was “to provide a simple and expedient procedure for correcting of errors occurring in assessing or collecting property taxes, whether they inure to the benefit of the taxpayer or the government.” 1994 Ariz. Sess. Laws, ch. 323, § 53;
 
 see also Pima County Assessor,
 
 195 Ariz. at 334, ¶ 14, 987 P.2d at 820 (concluding legislature intended error-correction statutes to remedy property tax errors “when appropriate to do so in the interest of justice”). Construing § 42-11005 as permitting correction of exemption-decision errors through an expedient administrative process furthers this purpose.
 

 ¶ 22 Assessor also contends that because our constitution mandates that the superior court has original jurisdiction of eases involving the legality of any tax, and imposing tax on an exempt property is illegal, we must conclude that § 42-11005 provides the exclusive remedy for deciding exemption denials.
 
 See
 
 Ariz. Const. art. 6, § 14 (“The superior court shall have original jurisdiction of: ... 2. Cases of equity and at law which involve ... the legality of any tax .... ”). But “original jurisdiction” is different than “exclusive jurisdiction.”
 
 Compare
 
 Ariz. Const. art. 6, § 5(2) (granting supreme court original and exclusive jurisdiction over claims between counties or concerning disputed boundaries). Our supreme court has held that the legislature can confer concurrent original jurisdiction on a tribunal concerning matters over which the constitution grants original jurisdiction to the superior court.
 
 State ex rel. Neely v. Brown,
 
 177 Ariz. 6, 8, 864 P.2d 1038, 1040 (1993). Consequently, the legislature was not prohibited from granting jurisdiction to the Board to correct classification and usage errors concerning exemption decisions that result in mistaken assessments or collections of taxes.
 

 
 *493
 
 ¶ 23 In light of our conclusion that § 42-11005 does not set forth the exclusive means for challenging an adverse exemption decision, we do not address the parties’ arguments concerning whether a challenge to a “use” decision is an allegation of illegal taxation.
 

 CONCLUSION
 

 ¶ 24 We hold that an assessor’s incorrect denial of a religious property exemption request constitutes a “mistake in assessing ... property taxes resulting from: ... [a]n incorrect designation or description of the use of property or its classification.” A.R.S. § 42—16251(3)(b). Consequently, the error-correction statutes authorize the Board to correct such error, A.R.S. § 42-16254(A), even though a taxpayer may also file a lawsuit in the tax court to challenge an exemption denial as an illegally collected tax after payment of the first installment of that tax. A.R.S. § 42-11005(A). For these reasons, we reverse. Because Taxpayer is not a party to this appeal, we need not remand for the tax court to decide whether the Board properly decided that Taxpayer’s property was tax exempt.
 

 CONCURRING: PHILIP HALL, Presiding Judge, and SHELDON H. WEISBERG, Judge.
 

 [1]
 

 . The error-correction statutes provide a similar process for a taxing authority seeking to correct an error. A.R.S. § 42-16252 (Supp.2004).
 

 [2]
 

 . The Board did not argue the anomalous impact of Assessor's interpretation of § 42-11005. However, "when we are considering the interpretation and application of statutes, we do not believe we can be limited to the arguments made by the parties if that would cause us to reach an incorrect result."
 
 Evenstad v. State,
 
 178 Ariz. 578, 582, 875 P.2d 811, 815 (App.1993).